EDWIN R. JUMP, trustee, *vs.* NAPOLEON BERNIER & others.

Suffolk. March 3, 1915. — May 21, 1915.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Assignment,* Of earnings. *Bankruptcy,* Unlawful preference.

Under St. 1909, c. 514, §§ 125, 126, as amended by St. 1910, c. 563, in regard to the recording of assignments of future earnings, whether the last named statute was repealed by implication by St. 1911, c. 727, §§ 22, 25, or not, an assignment by a building contractor of "whatever balance may be due me on my contract with" certain trustees of an unincorporated association "for alterations upon [a certain building] up to the amount of $900," when at the time of the assignment $1,800 is due to the assignor from the trustees and the assignment is given with the knowledge and assent of the trustees, is not an assignment of "future earnings" and no statute requires that it should be recorded.

In a suit in equity by a trustee in bankruptcy to avoid as an unlawful preference an assignment of a debt made by the plaintiff's bankrupt within four months before the filing of his voluntary petition in bankruptcy, where there is no definite evidence to show the value of the assets of the bankrupt at the time of the assignment and the evidence in regard to the amount of his debts at that time is still more vague, so that it cannot be ascertained whether the bankrupt's property at a fair valuation would have been at that time sufficient in amount to pay his debts, it cannot be found that the bankrupt was insolvent at the time he made the assignment, and therefore no unlawful preference under the provisions of the bankruptcy act of 1898 as amended by U. S. St. 1910, c. 412, § 11, is shown.

BILL IN EQUITY, filed in the Superior Court on October 9, 1913, by the trustee in bankruptcy of the estate of David F. Burns against Napoleon Bernier of Somerville and Kenneth G. T. Webster and Edith F. Webster, his wife, of Cambridge, — Alfred Bowditch and others as the trustees of the University Associates, an unincorporated association, also being made defendants by an amendment filed on December 2, 1913, — to set aside an order

or assignment made by Burns, the plaintiff's bankrupt, to the defendant Bernier on April 7, 1913, within four months before the filing by Burns of a voluntary petition in bankruptcy on May 28, 1913, on which he was adjudicated a bankrupt.

The case was heard by *Jenney*, J., who made a finding of material facts which he reported under R. L. c. 159, § 23, the evidence being reported by a commissioner appointed by the judge under Equity Rule 35. The judge made a final decree setting aside the order or assignment of Burns to the defendant Bernier dated April 7, 1913, as a preference against the creditors of Burns, and enjoining the defendant Bernier and the defendants Kenneth G. T. Webster and Edith F. Webster from enforcing the order against the defendants Bowditch and others as trustees of the University Associates. The defendants Webster and the defendant Bernier appealed.

*F. T. Hammond,* for the defendants Kenneth G. T. and Edith F. Webster.

*D. H. Fulton,* for the defendant Bernier.

*W. H. Thorpe,* for the plaintiff.

PIERCE, J. From the commissioner's report of the testimony it indisputably appears that on May 27, 1912, the defendant David F. Burns who then was, had been since 1877, and until May 28, 1913, continued to be a large contractor and builder, entered into a contract with the defendant Kenneth G. T. Webster to build a house for Webster's wife, for the sum, with certain allowances and extras, of $26,436.20; and that thereafter, in July, 1912, Burns became a party to several subsidiary subcontracts. Among the subcontracts was that of the defendant Bernier, who therein undertook to furnish the labor and material necessary to lath and plaster the house for the sum of $2,735.

As regards the other subcontracts, no reported testimony shows their number, their nature, the names of the party contractors, the original money consideration, or whether all or any of these contracts had been fully performed or the parties thereto discharged of their several obligations.

Shortly before April 7, 1913, Burns's business got into such a state that it was impossible for him to continue to go on with the Webster contract. The house was then nearly completed. There had been paid to him on his contract directly, or to subcontrac-

tors on his order, $24,016.75, and there was a balance under the contract of $2,419.45, to be paid upon the completion of the contract.

Under the provisions of Article V of the Webster contract the architect, one Ames, was authorized and empowered to certify to the owner the fact of the happening of certain enumerated defaults in the contractor's performance of his contract, among others, failure "to prosecute the work with promptness and diligence." Upon receipt of such a certification the owner would become at liberty to terminate the employment of the contractor and to proceed to complete the contract at the contractor's expense in the manner detailed in the article.

Walter G. Burns, the only son of the defendant Burns and his financial and business manager, acting with authority in his father's behalf in this business, went to see the architect, Ames, concerning Burns's situation in reference to the Webster contract. As a consequence of the interview the son then called at the office of Webster's attorney and there saw and talked with Franklin T. Hammond, Esquire, who was authorized to act as attorney for the defendants Webster but not for the defendant Bernier. In reply to Mr. Hammond's questions Burns told him his father could not complete the Webster contract. He (Burns) gave him (Hammond) the names of the subcontractors on that job, the amounts of their respective contracts and the several sums remaining unpaid upon each of them; he also stated that he was unable to meet the weekly pay roll, and gave to Mr. Hammond a list of the workmen other than those in the employ of the subcontractors, with the amounts due them; and Mr. Hammond thereafter paid them. Mr. Hammond asked if there was any way in which it could be arranged to pay what was owed to some of the contractors, and was told of the work that was being done and that the only money that could be come at was upon a contract that was almost completed for the University Associates. Mr. Hammond then asked if Burns, senior, would be willing to give the defendant Bernier an order for $900, to be drawn on the University Associaties and to be applied to his account. Burns stated that his father would be willing to give Bernier an order for $900, to be applied to his account if it was satisfactory to Mr. Parker, who was one of the trustees of the University Associates.

On the next day, Mr. Hammond, meanwhile having seen Mr. Parker, handed to Burns a typewritten assignment or order in tenor following:

"Know all men by these presents, That I, David F. Burns, of Cambridge, Massachusetts, in consideration of $1.00 and other valuable considerations hereby assign to Napoleon Bernier of Somerville, Massachusetts, whatever balance may be due me on my contract with the trustees of the University Associates for alterations upon the building numbered 1234 Massachusetts Avenue, Cambridge, up to the amount of nine hundred dollars, ($900) it being understood that this assignment is subject to a prior assignment given the William H. Wood Company and to my right or the right of the said trustees to pay out of the money coming due out of said contract the unpaid bills for labor and materials now or hereafter furnished for that particular job but for no other.

Witness my hand and seal this 7th day of April, A.D. 1913.

David F. Burns    (Seal)."

Burns took the assignment or order to his father and returned it to Mr. Hammond after his father had signed it. Without conference or any pre-arrangement with Bernier and without Bernier's knowledge that any such act was contemplated, Mr. Hammond sent the assignment or order on the following day (April 9, 1913) to Bernier, with an accompanying letter couched in these terms:

"Dear Sir:

I hand you herewith an assignment and an order for the payment of $900 out of the money coming due me upon the job which I am doing for the University Associates in Cambridge. I give you this order and assignment on the understanding that the amount collected upon it is to be applied in reduction of the amount due from me to you for the work which you have done and may do upon the house of Mr. Kenneth G. T. Webster in Cambridge, Massachusetts.

(Enclosures) "

Bernier received the assignment or order without knowledge, so far as appears, of Burns's insolvency, and without reason to

believe that the effect of the transfer would be to enable him or any other creditor of Burns to obtain a greater percentage of his debts than any other of such creditors of the same class. At this time there remained unpaid to Bernier upon his subcontract $2,282. The contract was not fully performed, but how much had been done and how much remained to be done cannot be determined even approximately. Bernier himself was not in any default. The Bernier subcontract contained no provision relating to the time of payments, but Burns, junior, testified that "he [Bernier] was to be paid from time to time as we received our payments on the work."

After the sending of the order and letter of April 9, 1913, no other letter or communication was had with Bernier until at some time within a week thereafter, Burns, junior, saw him and related to him the circumstances of Burns's giving the assignment. Thereupon Bernier said he would not complete the job; he was not going to do any more until he had been secured for the money that was due him. At the end of the week following the date of the assignment, Burns stopped work on the Webster house, and on April 22, 1913, Webster, acting under a certificate from the architect, formally terminated his contract with Burns.

After the termination of the contract Bernier completed his work under his contract, under a new arrangement with Webster, and thereafter brought a petition to enforce a lien upon the house and lot, which petition now is pending. On April 22, 1913, the day Webster terminated his contract with Burns, he (Webster) entered into an agreement with Bernier to complete the work remaining to be done by Bernier under his contract with Burns, and as a part thereof made a collateral agreement relative to the assignment as follows:

"Memorandum. April 22, 1913.

"Mrs. Webster loans Mr. Bernier $500 payable when the work on the Webster house now being done by Bernier is completed. At that time Mr. Bernier will present his claim for lien on the Webster work and will file it if desired. He will then give a discharge of his claim for lien, and his lien, upon the payment to him by Mr. Webster of the amount of his lien.

"Mr. Bernier now has an order for $900 on the trustees of the

University Associates given him by Burns in part payment for his work on the Webster house. He agrees to apply the sum collected on this order in reduction of his claim for lien, and lien, if the order is collected before his work on the Webster house is completed. If not he agrees to assign to Mr. Webster the order aforesaid for the sum of $900.

N. Bernier."

On April 7, 1913, when the work for the University Associates although not completed yet was substantially so, there was due to Burns $1,800, from which the assignment subject to other assignments could be paid. On May 28, 1913, David F. Burns filed a voluntary petition in bankruptcy and was duly adjudicated a bankrupt on June 27, 1913. The trustees assert, and the defendants deny, that the assignment is an assignment of future earnings, and not being recorded is not valid under the provisions of R. L. c. 189, § 34.

R. L. c. 189, § 34, was expressly repealed by St. 1909, c. 514, § 145, and a new provision limited in terms to "future wages" was enacted by §§ 125, 126 of that act. This statute in turn was amended by St. 1910, c. 563, by striking out the word "wages" and inserting in place thereof the word "earnings." The word "earnings," by the express re-enactment, must be taken to have the meaning given thereto in *Somers* v. *Keliher,* 115 Mass. 165. It is unnecessary to decide, in view of the facts, whether the last named statute was repealed by implication by St. 1911, c. 727, §§ 22, 25. *Wilson* v. *Head,* 184 Mass. 515. The assignment operated to transfer at least "whatever balance [then] may be due me," and there was then due $1,800. The contract had been substantially performed, and it may be inferred from the fact that the order was not given until after Mr. Hammond had had a conference with the trustees of the University Associates and that it was given with their knowledge and assent. See *Allen* v. *Mayers,* 184 Mass. 486. It was not an assignment of "future earnings" within the meaning of the statute, and the law did not require that it should be recorded.

Assuming that the assignment was not voidable because not recorded, was it such because it transferred property of an insolvent to a creditor receiving it, or to a creditor to be benefited

thereby, that person having reasonable cause to believe that such transfer would affect a preference within the provisions of the bankruptcy act of 1898, § 60, a, b (U. S. St. 1898, c. 541, as amended by U. S. St. 1910, c. 412, § 11)? The question which confronts us at the threshold of the inquiry is: Was Burns, on April 7, 1913, an insolvent person? "A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts." Bankruptcy act of 1898, § 1 (15).

The testimony offered to show the value of the assets and the amount of the debts could not designedly have been more vague, indefinite and unsatisfactory. It does appear that there were three parcels of real estate, in the city of Cambridge, but no evidence was produced or offered to show the fair value of any single parcel or of all the parcels, nor was there any testimony of market value, assuming that in a supposable case there may be a difference in these terms of measure of value. Remington on Bankruptcy, (2d ed.) §§ 1350, 1351. The evidence showed that the first of the three parcels was let out at a gross weekly rental of $8, the second at a gross monthly rental of $35, and the third, a double house, was occupied by Burns and his son, with no stated rental value. No testimony appears to have been given of the fair or market value of any personal property.

It would be possible to estimate the annual rental value of the two rent producing parcels, but no data exist upon which an opinion can rest of the market or rental value of the third parcel.

Even if it were possible to determine by estimate the rental value of these properties, the fair or market value remains an unanswered speculative question. So long as this question remains unanswered it is impossible to say that Burns was insolvent when he gave the assignment to Bernier.

As to the debts the son testified: "Well, I don't know; the schedule in bankruptcy will show that. I think $25,000, — I think." Again: "I couldn't state the exact amount. . . . I should estimate $25,000; I don't know whether I am $10,000 out or not." The precise question was whether the property of Burns,

at a "fair valuation," would be sufficient to pay his debts, and for the solution of that question it was quite as needful to ascertain with some degree of precision the amount of his debts as the value of his property. *Schloss* v. *A. Strellow & Co.* 156 Fed. Rep. 662.

It becomes unnecessary to determine whether Webster or his wife had a possible claim against Burns by reason of the fact that the subcontractor Bernier had a possible mechanic's lien on Mrs. Webster's land for labor performed and furnished. See *Angier* v. *Bay State Distilling Co.* 178 Mass. 163, 171. If not, then the Websters were not persons to be benefited within the provisions of § 60 a, b, and the act prohibiting preferential transfers is not applicable to them or to either of them. *Richardson* v. *Shaw,* 209 U. S. 365. See cases collected in Collier on Bankruptcy, (10th ed.) 813, notes 145, 146; *Clarke* v. *Rogers,* 183 Fed. Rep. 518 (affirmed in 228 U. S. 534).

The decree appealed from must be reversed.

*So ordered.*