GEORGE H. MASON, trustee in bankruptcy, *vs.* JOHN WYLDE
& others.

Worcester. September 22, 23, 1936. — February 24, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, DOLAN, COX, &
RONAN, JJ.

*Trust Receipt. Bankruptcy,* Trustee's rights, Fraudulent conveyance,
Preference. *Mortgage,* Of personal property: what constitutes, re-
cording, validity, foreclosure, redemption. *Fraudulent Conveyance.
Insolvency. Practice, Civil,* Exceptions: what is subject to exception;
Requests, rulings and instructions; Auditor: findings, trial on report
only, ordering of judgment on report.

An exception lies to the allowance of a motion for judgment at the hear-
ing of an action at law solely upon the report of an auditor whose
findings were not final.

Requests for rulings of law, at the hearing of an action at law solely
upon the report of an auditor whose findings were not final, have a
legal standing; and a refusal to act on them is an implied denial and
is subject to exception.

An exception by the defendant "to the finding, ruling and order" of a
judge, who heard an action at law solely on the report of an auditor
whose findings were not final and ordered judgment for the plaintiff,
presented the question, whether the general finding by the judge,
imported by the order of judgment, was permissible on the facts
found by the auditor and reasonable inferences therefrom.

An instrument, entitled a "trust receipt," signed by a dealer in auto-
mobiles who had taken title to an automobile from the manufacturer
by purchase made with funds advanced to him by a distributor, in
which instrument he acknowledged that he had received possession
of the automobile from the distributor, "the owner thereof," and that
it had been "purchased under credit opened by the distributor" for
his account, and agreed to hold it "in trust for the distributor" with
liberty to sell it with the distributor's consent, "the intention being
to preserve intact the distributor's title" until full payment should
have been made of any indebtedness of the dealer to the distributor
and with a right in the distributor, in case of insolvency of the dealer,
to "repossess" the automobile and sell it and apply the proceeds to
advances made for the dealer's account, passed title to the distribu-
tor for security only and was in effect a chattel mortgage; and, although
unrecorded, was under G. L. (Ter. Ed.) c. 255, § 1, valid as between
the immediate parties to it from the time it was executed and delivered.

When the distributor above mentioned, upon learning that the dealer
had become insolvent, in good faith took possession of the automo-

bile to foreclose his security before bankruptcy of the dealer, he acquired a title good against the world except as to the right of the dealer to redeem during such possession.

A trustee in bankruptcy, if he attempted to enforce under G. L. (Ter. Ed.) c. 255, § 4, a right to redeem automobiles, possession of which had been taken before bankruptcy by one who was in substance a chattel mortgagee under a so called trust receipt, had the burden of proving that the right of redemption had not been foreclosed and was precluded from relying on such right as against the security holder where it appeared merely that the security holder had taken possession of the automobiles two days before the bankruptcy and "later sold them," acting in good faith and without objection from the trustee, for a price not in excess of the debt secured.

Circumstances in which a distributor of automobiles, within four months before a dealer's bankruptcy, took title to certain automobiles from him under an unrecorded "trust receipt" which was in substance a chattel mortgage, as security for amounts then advanced to the dealer for their purchase, and, afterwards, upon being informed by the dealer of his imminent bankruptcy, took possession of the automobiles under the provisions of the "receipt" and in good faith sold them for a sum not in excess of the debt secured, would not have warranted a finding of actual intent of the dealer to defraud his creditors or of a conveyance in fraud of creditors under G. L. (Ter. Ed.) c. 109A.

Even if, at a time when a dealer in automobiles executed and delivered an instrument, in substance a chattel mortgage of automobiles, his business was diminishing in volume, which was a normal condition at that season, he was "low on funds," and his financial condition was "poor but not necessarily insolvent," a conclusion was not warranted that he was then insolvent, although about two weeks later he was insolvent and was adjudicated a bankrupt; and the giving of the instrument was not a preference under the bankruptcy act, U. S. C. Title 11, § 96.

CONTRACT OR TORT. Writ in the Superior Court dated April 15, 1933.

The case was heard by *Whiting*, J.

The case was argued at the sitting of this court in September, 1936, before *Rugg*, C.J., *Crosby*, *Field*, *Donahue*, & *Lummus*, JJ., and, after the retirement of *Crosby*, J., and the death of *Rugg*, C.J., was submitted on briefs to *Qua*, *Dolan*, *Cox*, & *Ronan*, JJ.

*C. W. Rowley*, for the defendants.

*H. Zarrow*, for the plaintiff.

FIELD, C.J. This is an action of tort or contract brought by the trustee in bankruptcy — duly authorized to bring this suit — of the Worcester Motor Company, Inc., herein

referred to as the company, to recover the value of sixteen automobiles. The declaration is in four counts, all for the same cause of action, the first count alleging a conversion, the second a voidable preference, and the third receiving goods of the bankrupt with intent to hinder and delay other creditors, and the fourth being for money had and received. The defendants' answer was a general denial. The case was referred to an auditor whose findings of fact were not to be final. The auditor filed a report and, after recommittal, a supplementary report. The plaintiff moved for judgment on the auditor's reports. In accordance with Rule 88 of the Superior Court (1932) trial was had on the auditor's report and supplementary report only. The defendants made requests for rulings upon which the trial judge indorsed: "I do not act on the within requests." He "allowed" the plaintiff's motion for judgment and found for the plaintiff in the sum of $3,291.76. The defendants excepted to the "refusal" of the judge to grant their requests for rulings and "to the finding, ruling and order" of the judge.

First. The hearing on this motion for judgment under Rule 88 was a trial of fact on evidence — the only evidence being the auditor's reports. And the allowance of the plaintiff's motion for judgment and the finding for the plaintiff in the sum of $3,291.76 constituted an order for judgment for the plaintiff in that sum. See *Edinburg* v. *Allen-Squire Co.* 299 Mass. 206. To such an order an exception lies. *Ballou* v. *Fitzpatrick*, 283 Mass. 336. *DiDonato* v. *Renzi*, 295 Mass. 113, 114, 116–117. And in a case so heard — unlike a case heard on an auditor's report where the findings of fact are to be final — requests for rulings have legal standing, and to the denial of such a request an exception lies. See *Nutter* v. *Mroczka*, 303 Mass. 343, 347–348. The judge in the present case, in making a decision for the plaintiff without passing upon the defendants' requests for rulings, impliedly denied all such requests as were relevant and inconsistent with the decision. *Simmons* v. *Poole*, 227 Mass. 29, 34. *Bankoff* v. *Coleman Bros. Inc.* 302 Mass. 122, 123.

Second. The defendants' exception "to the finding, ruling and order" of the judge presents the question whether there

was error of law in ordering judgment for the plaintiff on the auditor's reports — not as a ruling of law but as a finding of facts — stated conversely, whether the finding for the plaintiff made by the judge as a trier of facts on the auditor's reports as the sole evidence — which the order of judgment imports — was permissible on the facts found by the auditor and reasonable inferences therefrom. The effect of findings of auditors — whose findings of fact are not agreed to be final — was fully discussed in *Cook* v. *Farm Service Stores, Inc.* 301 Mass. 564, and the statements there made need not be repeated. It is clear, in accordance with what was there said, that the finding of the auditor for the defendants in the original report, that "if, as a matter of law, on the facts found by me, the defendants were entitled to do the acts which they did, the finding should be for the defendant[s], and I so find for the defendant[s]," did not preclude the judge from finding for the plaintiff, if such a finding was warranted by the other facts found by the auditor. We are of opinion, however, that a finding for the plaintiff was not so warranted.

Facts found by the auditor include the following: The company was adjudicated bankrupt on August 5, 1932. (It does not appear that the proceedings were involuntary.) During the year 1931 and until August 1, 1932, it was engaged in the business of buying, selling and dealing in motor vehicles, making use of money advanced by the defendants upon the security of such motor vehicles that were held by the company. The money was advanced by the defendants on so called trust receipts, hereinafter described, which were not recorded. Advances of money by the defendants and the purchasing of automobiles by the company were carried on in the following manner: The company "would send its representative to the Ford Motor Company, at Somerville, Massachusetts, and there pick out the new cars which . . . [the company] decided to purchase, and would pay for the new cars with a check drawn on the bank account of the . . . [company]; the cars, together with invoices covering the cars, would be given to . . . [the company] in return for the checks;

the cars would then be taken to the showrooms of . . . [the company] and the defendants would be notified that the cars were there; the defendants would send their representative to the . . . [company's] showrooms, examine the cars, check the motor numbers with the motor numbers on the invoices, make out trust receipts, which would be signed by the . . . [company] in favor of the defendants, covering the cars, and give to the . . . [company] the defendants' check in a sum sufficient to cover the check previously given the Ford Motor Company by the . . . [company]; the original invoices would be given to the defendants, together with trust receipts, as security for the loan represented by the check given to . . . [the company] by the defendants; the defendants' check would be deposited in the . . . [company's] bank account before the . . . [company's] check to the Ford Motor Company would have time to clear. All of this usually took place within the course of a few hours. . . . The motor vehicles which were described in the trust receipts executed and delivered to the defendants by . . . [the company] were kept upon the premises occupied by the . . . [company] in Worcester." The amounts advanced by the defendants on so called trust receipts were approximately ninety per cent of the purchase price of new automobiles or of the "trade-in-value" of used automobiles.

Each so called trust receipt was signed by the company and recited that the company had received from the defendants, "the owner thereof (hereinafter termed 'the Distributor')," a certain motor vehicle therein described "purchased under credit opened by the Distributor for our account, in consideration whereof we agree, at our expense to hold said Motor Vehicle in trust for the Distributor, its successors or assigns, as its property, and agree to return the same on demand in good order and unused but with liberty to us to exhibit and, if the written consent of the Distributor has first been obtained, to sell same for its account for cash . . . the intention being to preserve intact the Distributor's title thereto until the full payment of our note of equal number herewith and any other in-

debtedness due from us, and we further agree in case of sale of said Motor Vehicle to keep the proceeds separate from our funds and immediately hand the proceeds to the Distributor, its successors or assigns, without expense or cost to the Distributor, its successors or assigns. The acceptance by the Distributor of note attached (which we have this day executed) shall not be effective to terminate this trust, but said note and any sums delivered by us shall be security for the performance of the things obligatory upon us hereunder. . . . The Distributor, its successors or assigns, may at any time cancel this trust and repossess itself of said Motor Vehicle or the proceeds thereof. In the event of our insolvency, suspension or failure to pay the note of even date herewith, or our breach of this trust, all notes due from us to the Distributor shall immediately become due and payable, and the Distributor, its successors or assigns, shall have the right to enter our premises and repossess itself of any and all Motor Vehicles held by us under this receipt or any like receipt without being guilty of any trespass. . . . We further agree . . . that the Distributor, its successors or assigns, may sell said Motor Vehicle and apply the proceeds to advances made for our account." Each "trust receipt" was accompanied by an assignment signed by the company of "all its rights and interest in this Trust Receipt," and by a promissory note of the company for the purchase price.

Prior to August 1, 1932, the company was the owner, subject to "trust receipts" such as are above described, and in possession of five new automobiles and eleven used automobiles. The "trust receipts" relating to the five new automobiles were given at some time before July 22, 1932. The "trust receipts" relating to the eleven used automobiles were on that date given by the company and accepted by the defendants in substitution for "trust receipts" previously given relating to four new automobiles which had been sold by the company without making payment to the defendants of the amount of the company's indebtedness therefor.

The total amount of the "trust receipts" relating to the

eleven automobiles was the amount remaining unpaid on the "trust receipts" for which they were substituted. "The defendants were told at the time that these eleven trust receipts were given to them that two of the officers of the . . . [company] were going to put a large sum of money into the business within a few days, and it was implied that the eleven trust receipts would be redeemed from the defendants with part of this money." At the time these four "trust receipts" relating to the four new automobiles sold by the company were given the defendants believed that the company was solvent, and had a right so to believe. The business of the company "was getting slack and was diminishing in volume, and had been diminishing for at least two months before the repossession . . . it is a normal condition in the automobile trade to have business decrease in volume during the months of July and August," but to "most outward appearances, the business continued to operate in a normal manner." The "defendants knew on July 22, 1932, that the . . . [company] was low on funds and needed what cash it had to meet its payroll; and had used some of the cash belonging to the defendants for that purpose." The "defendants had the right to examine the books of the . . . [company and] the financial condition of the . . . [company] had been discussed between the defendants and the . . . [company] several times during the two or three months previous to the time of the repossession." At "the time of the giving of the eleven trust receipts in place of the original four, namely on July 22, 1932, the defendants knew, or should have known, that the financial condition of the . . . [company] was poor but not necessarily insolvent, though the defendants believed, and had a right to so believe, that further capital was going to be put into the business of the . . . [company]." "On or about August 1, 1932, one of the directors of . . . [the company], who had been expected to put more money into . . . [the company], called an agent of the defendant[s] saying in substance that no more money was going to be put into . . . [the company], and that that corporation was going into bankruptcy; also instructing the defendant[s]

to come up and take the cars on which the eleven trust receipts were held."

On or about August 3, 1932, the defendants took possession of the eleven used automobiles and the five new automobiles and later sold them. In selling these automobiles "the defendants acted in good faith and within the powers set forth in the trust receipts." At the time the defendants took possession of the automobiles the company "was insolvent, and the defendants knew, or had reasonable grounds for believing, that that was the fact."

The total fair market value of the five new automobiles at the time the defendants took possession of them, the amount for which they were sold and the amount due on the "trust receipts" was $2,270. The total value of the eleven used automobiles at the time the "trust receipts" relating to them were given was $1,396; the values thereof set forth in the "trust receipts" were "fair and reasonable" and these automobiles "were sold for a reasonable price and the defendants did not receive any sums in excess of the amounts due them under said trust receipts," the costs of collection being borne by the defendants.

1. The plaintiff, as trustee in bankruptcy of the company, took, under the bankruptcy act, with exceptions not here material, as of the date of the petition in bankruptcy (a date not appearing in the record, but not later than August 5, 1932, which was the date of adjudication and is herein referred to as the date of bankruptcy), the company's title to property, the title to property, if any, which had been transferred by the company in fraud of creditors, and all rights and remedies that a lien or judgment creditor of the company would have as of the date of bankruptcy, together with special rights created by the act to avoid transfers made within four months before that date. U. S. C. Title 11, §§ 75, 96 (see Act of May 27, 1926, c. 406, § 14, 44 U. S. Sts. at Large, Part 2, 666 [U. S. C. Sup. V]; see now Act of June 22, 1938, c. 575, 52 U. S. Sts. at Large, 840, et seq.), 107, 110.

2. The company, on or about August 3, 1932, when the defendants took possession of the sixteen automobiles

was the owner of them, subject to the rights of the defendants therein under the "trust receipts." Any title to, or rights in, the automobiles acquired by the defendants prior to their taking possession thereof were acquired by the defendants from the company under such "trust receipts." In this respect the transaction differed from that considered in *Handy* v. *C. I. T. Corp.* 291 Mass. 157, 161, where the lender acquired legal title to an automobile directly from the wholesale automobile distributor — not from the dealer — and such lender never conveyed title to such automobile to the dealer. Compare also *Associates Discount Corp.* v. *C. E. Fay Co.* 307 Mass. 577. It properly is not contended by either party that the so called trust receipts were "trust receipts" in the strict sense. See *Peoples National Bank* v. *Mulholland*, 224 Mass. 448; *S. C.* 228 Mass. 152. The "trust receipts," however, were security instruments by which title to the automobiles passed to the defendants for security only. They were, in substance, chattel mortgages and were governed by the law applicable to chattel mortgages. *Hartford Accident & Indemnity Co.* v. *Callahan*, 271 Mass. 556, 561–564. Since they were not recorded they were not "valid against a person other than the parties thereto" (G. L. [Ter. Ed.] c. 255, § 1, see *Leahy* v. *George*, 273 Mass. 130, 133), and, consequently, were not valid as security instruments against creditors of the company or the trustee in bankruptcy. Such a trustee was not a party to the instruments within the meaning of G. L. (Ter. Ed.) c. 255, § 1. See *Alexander* v. *F. L. Smithe Machine Co.* 248 Mass. 436, 439; *McGlue* v. *Loudon*, 251 Mass. 173, 174–175.

3. The so called trust receipts, however, were valid as between the parties thereto — the company and the defendants — from the time they were executed. See G. L. (Ter. Ed.) c. 255, § 1; *Folsom* v. *Clemence*, 111 Mass. 273, 277; *Hartford Accident & Indemnity Co.* v. *Callahan*, 271 Mass. 556, 560. See also *Dale* v. *Pattison*, 234 U. S. 399, 405–406. And, so far as appears from the facts found, possession of the automobiles was taken by the defendants before the date of bankruptcy in accordance with the terms of the "trust receipts," so that thereafter the auto-

mobiles were not held by the defendants as security, but, rather, the absolute property therein, or in the proceeds of the sale thereof, prior to the date of bankruptcy, was in the defendants, subject to the company's right of redemption under G. L. (Ter. Ed.) c. 255, § 4, unless such automobiles had been acquired by the defendants in fraud of the company, subject, nevertheless, to the rights, if any, of creditors of the company to which the trustee succeeded, and to the special rights of the trustee, if any, created by the bankruptcy act, to avoid the transfers. The title of the defendants to the automobiles was perfected by the defendants by their taking possession of the automobiles for foreclosure according to the terms of the "trust receipts" before the date of bankruptcy. See *Vorenberg* v. *American House Hotel Co.* 246 Mass. 108, 111. See also *Tatman* v. *Humphrey*, 184 Mass. 361, 362, and cases cited; *S. C. sub nomine Humphrey* v. *Tatman*, 198 U. S. 91, 94; *Coggan* v. *Ward*, 215 Mass. 13, 14–16, and cases cited. The present case differs from *Leahy* v. *George*, 273 Mass. 130, where possession of property under an unrecorded security instrument was taken by the person secured for security and not for foreclosure and it was held that such possession did not validate the instrument for purposes of security as against third persons. The present case also differs from *Alexander* v. *F. L. Smithe Machine Co.* 248 Mass. 436, where possession of property under a security instrument was not taken until after the date of bankruptcy. See also *Fairbanks Steam Shovel Co.* v. *Wills*, 240 U. S. 642, 649. The fact that the "trust receipts" were not recorded did not prevent the defendants from acquiring title to the automobiles thereunder prior to the date of bankruptcy as against the company if no rights of other persons had intervened. A different conclusion, so far as relates to title as against the company, would be inconsistent with the validity of the "trust receipts" as between the parties thereto. The recommendation of a special commission for legislation providing "that no possession for foreclosure shall be valid if taken under an unrecorded mortgage" (see House Document 1915, No. 1600, pages 16, 30) was not adopted when

R. L. c. 198, § 1, appearing now in G. L. (Ter. Ed.) c. 255, § 1, was amended by St. 1915, c. 226. Therefore, it does not appear that at the date of bankruptcy the company had any title to or interest in the automobiles to which the trustee succeeded, apart, at least, from the right to redeem. Nor does it appear, nor is it contended, that the taking of the "trust receipts" by the defendants, or their taking possession of the automobiles thereunder, was fraudulent as against the company so that on this ground the transfers effected could be avoided by the trustee.

4. G. L. (Ter. Ed.) c. 255, § 4, applicable to chattel mortgages and, consequently, to the "trust receipts" in question, provides in part that the "mortgagor or a person lawfully claiming under him may, after breach of condition, redeem the mortgaged property at any time before it is sold in pursuance of the contract between the parties, or before the right of redemption is foreclosed. The person entitled to redeem shall pay or tender to the mortgagee or to the person claiming under him the amount due on the mortgage . . . ." See *Wasserman* v. *McDonnell*, 190 Mass. 326, 329. If the plaintiff, as ground of recovery, relied upon his interest as trustee in the company's right of redemption, the burden was on him to show that this right had not been foreclosed by the sale of the automobiles in pursuance of the contracts between the company and the defendants before the date of bankruptcy, August 5, 1932. This burden has not been sustained. The finding of the auditor on this matter was merely that the defendants having taken possession of the automobiles on or about August 3, 1932, "later sold them." Although the interval between the taking of possession and the date of bankruptcy was necessarily very short, the inference was not permissible that the automobiles were not sold in this interval. Moreover, even if the automobiles were not sold in this interval, the title of the defendants to them, subject to the right of redemption, was not affected by the failure of the defendants to sell the automobiles before the date of bankruptcy, August 5, 1932. The company, after the defendants had lawfully taken possession of the automobiles for fore-

closure in accordance with the terms of the "trust receipts," retained only its right of redemption, which vested in the plaintiff as trustee. Compare *Mitchell* v. *Black*, 6 Gray, 100, 106; *Dickinson* v. *Central National Bank*, 129 Mass. 279, 283; *James B. Drake & Sons* v. *Nickerson*, 123 Maine, 11, 13. It does not appear, however, that before the sale of the automobiles the plaintiff as trustee in bankruptcy had taken any steps to redeem the automobiles or to enjoin a sale thereof by the defendants. See *Harlow Realty Co.* v. *Cotter*, 284 Mass. 68, 72; *Continental Illinois National Bank & Trust Co.* v. *Chicago, Rock Island & Pacific Railway*, 294 U. S. 648, 675–678. Although, by reason of the failure to record the "trust receipts," the defendants could not rightly have taken possession of the automobiles for foreclosure after the date of bankruptcy, the defendants, having lawfully taken possession of them before that date, were not precluded by the bankruptcy from exercising, after its date, in good faith, their contractual power of sale. See *Hall* v. *Bliss*, 118 Mass. 554, 560–561; *Harlow Realty Co.* v. *Cotter*, 284 Mass. 68; *Hiscock* v. *Varick Bank of New York*, 206 U. S. 28, 38; *Robinson* v. *Kay*, 7 Fed. (2d) 576, 578; *Heffron* v. *Western Loan & Building Co.* 84 Fed. (2d) 301, 303–305. The auditor found expressly that the defendants, in selling the automobiles, "acted in good faith." And on the findings of the auditor there was no excess of the price for which the automobiles were sold over the company's debt to the defendants to which the plaintiff, as trustee, would be entitled. See *Harlow Realty Co.* v. *Cotter*, 284 Mass. 68, 72. The plaintiff, therefore, cannot recover in this action by reason of his interest in the right of redemption unless he has some other ground of recovery.

5. Furthermore, it does not appear that, before the defendants perfected their title to the automobiles or before the date of bankruptcy, the rights of any person other than the company and the defendants had intervened. No such person — other than the trustee in bankruptcy — is asserting any such rights in this case. Before the date of bankruptcy of the company no creditor other than the defendants, so far as appears, had any lien, legal or equitable,

upon the automobiles or in any respect stood in a better position with relation thereto than the general creditors. And the "rights, remedies, and powers" of a lien or execution creditor of the bankrupt which are conferred on a trustee by U. S. C. Title 11, § 75 (a), are to be determined as of the date of bankruptcy — not as of an earlier date — and according to State law. *Bailey* v. *Baker Ice Machine Co.* 239 U. S. 268, 275–276. *Finance & Guaranty Co.* v. *Oppenhimer*, 276 U. S. 10, 12. Though under State law the "trust receipts" were not valid as security instruments against general creditors and, consequently, prior to the defendants' taking possession of the automobiles, these automobiles "might have been levied upon" by any such creditor "and sold under judicial process" against the company (U. S. C. Title 11, § 110 [a] [5] ), see *McGlue* v. *Loudon*, 251 Mass. 173, 175, no creditor has so levied, and the right to do so had expired, so far as appears, before the date of bankruptcy, by reason of the defendants having perfected their title to such automobiles in accordance with the terms of the "trust receipts." Compare *Wasserman* v. *McDonnell*, 190 Mass. 326, 328. The fact that the "trust receipts" were not recorded did not prevent the defendants from so perfecting their title to the automobiles or the proceeds thereof, as distinguished from obtaining a lien thereon, see *Leahy* v. *George*, 273 Mass. 130, even as against general creditors of the company and, consequently, as against the trustee in bankruptcy. *Tatman* v. *Humphrey*, 184 Mass. 361, 362, and cases cited; *S. C. sub nomine Humphrey* v. *Tatman*, 198 U. S. 91, 94. *Coggan* v. *Ward*, 215 Mass. 13, 16. *Thompson* v. *Fairbanks*, 196 U. S. 516. *Finance & Guaranty Co.* v. *Oppenhimer*, 276 U. S. 10. *Burrowes* v. *Nimocks*, 35 Fed. (2d) 152, 157.

6. The rights of the plaintiff as trustee in bankruptcy to recover in this action from the defendants must rest, therefore, (A) on the ground of a conveyance of the automobiles to the defendants in fraud of creditors according to the principles of State law governing fraudulent conveyances, see G. L. (Ter. Ed.) c. 109A, so that under U. S. C. Title 11, § 110 (a) (e), title to the automobiles passed to the trustee

or the transfer was voidable by him (see *Stellwagen* v. *Clum*, 245 U. S. 605, 614), (B) on the ground of a conveyance, transfer, assignment or encumbrance of the automobiles made within four months prior to the date of bankruptcy which was void under U. S. C. Title 11, § 107 (e), either because made "with the intent and purpose" on the part of the company "to hinder, delay, or defraud . . . creditors," or because constituting a conveyance, transfer or encumbrance made by the company "while insolvent," which is "held null and void as against the creditors of such debtor by the laws" of this Commonwealth, or (C) on the ground of a transfer voidable by the trustee under U. S. C. Title 11, § 96 (b) (see Act of May 27, 1926, c. 406, § 14, 44 U. S. Sts. at Large, Part 2, 666 [U. S. C. Sup. V]; see now Act of June 22, 1938, c. 575, 52 U. S. Sts. at Large, 840, *et seq.*), because made within four months before the date of bankruptcy when the company was "insolvent" and the transfer operated as a preference. See *Coder* v. *Arts*, 213 U. S. 223, 241–245; *Van Iderstine* v. *National Discount Co.* 227 U. S. 575, 582–583; *Dean* v. *Davis*, 242 U. S. 438, 443–447. We now consider these grounds.

7. On the facts found there was no conveyance of the automobiles to the defendants in fraud of creditors according to the principles of State law governing fraudulent conveyances, see G. L. (Ter. Ed.) c. 109A, so that under U. S. C. Title 11, § 110 (a) (e), title to the automobiles passed to the trustee or the transfer was voidable by him. Indeed, no contention of the plaintiff, the trustee in bankruptcy, is addressed directly to this point.

The subsidiary findings did not warrant an inference that at any of the times when the so called trust receipts were given by the company to the defendants, or at the time possession of the automobiles was taken by the defendants, the company had "actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors." G. L. (Ter. Ed.) c. 109A, § 7. Clearly this is true as of the times when the original "trust receipts" were given. Each was given as security for the purchase price of an automobile. The

assets of the company were not depleted by the giving of
these "trust receipts." They took nothing away from the
creditors. The so called trust receipts relating to the eleven
used automobiles were given in substitution for the original
"trust receipts" for four new automobiles as security for
the original obligations. Even if these new "trust re-
ceipts" were not given strictly in substitution for these
original "trust receipts" for the reason that the security
of these original "trust receipts" had expired several days
before these new "trust receipts" were given (compare
*Hanford* v. *Codman,* 266 Mass. 93, 96; *Comparone* v. *M. J.
Caplan Co. Inc.* 270 Mass. 74, 79), the circumstance of
the giving of the new "trust receipts" — those relating to
the used automobiles — did not warrant an inference of
"actual intent" on the part of the company such as is
described in the statute. It is consistent with these findings
that the sole object of the company in giving these new
"trust receipts" was to secure the payment of debts owed
by it to the defendants and previously secured by "trust
receipts" relating to other automobiles. See *Banca Italiana
Di Sconto* v. *Bailey,* 260 Mass. 151, 159–160; *Shay* v. *Gagne,*
275 Mass. 386, 391; *Coder* v. *Arts,* 213 U. S. 223, 242–244.
Whatever effect the delay in making the substitution of the
new "trust receipts" might have in other aspects, it and
the circumstances attending it were not sufficient to war-
rant an inference of "actual intent . . . to hinder, delay
or defraud" creditors. And even though the so called trust
receipts were not valid as security instruments against
creditors of the company or the trustee in bankruptcy by
reason of the failure to record them, G. L. (Ter. Ed.) c. 255,
§ 1, there are no facts found relating to such failure to
record warranting the inference of such an "actual intent."
No agreement or understanding to withhold the "trust
receipts" from record is shown. See *National Bank of
Athens* v. *Shackelford,* 239 U. S. 81; *Martin* v. *Commercial
National Bank of Macon,* 245 U. S. 513, 515; *Rankin* v.
*Cox,* 71 Fed. (2d) 56, 59; *In re Farm & Home Co.* 84 Fed.
(2d) 933, 935; *Folsom* v. *Clemence,* 111 Mass. 273, 277.
The fraudulent intent may be proved by conduct, but it

must be proved and is not to be presumed. See *Kerrigan* v. *Fortunato*, 304 Mass. 617, 620; *Feist* v. *Druckerman*, 70 Fed. (2d) 333, 334.

Nor could "actual intent" on the part of the company "to hinder, delay or defraud" creditors be inferred from the circumstances in which the defendants took possession of the automobiles. Even if the director of the company, referred to in the auditor's report, was acting by its authority in advising the defendants of the imminent bankruptcy of the company he was merely, so far as appears, aiding the defendants in exercising for their own protection their legal rights under the "trust receipts." On the findings of the auditor the defendants acted in "good faith" in exercising their legal rights under the "trust receipts" and gave for the automobiles "fair consideration," within the meaning of these words as defined in G. L. (Ter. Ed.) c. 109A, § 3 (a) — the satisfaction of an antecedent debt. See *Barishefsky* v. *Cohen*, 299 Mass. 360, 362. The defendants obtained only what was due them. *Giddings* v. *Sears*, 115 Mass. 505, 507–508. *Carr* v. *Briggs*, 156 Mass. 78, 81. *Samuels* v. *Charles E. Fogg Co.* 258 Mass. 402, 406. *Harris* v. *Flynn*, 272 Mass. 8, 14. Coöperation by the company in such exercise of legal rights by the defendants does not warrant an inference of "actual intent" on the part of the company "to hinder, delay or defraud" creditors, even though the necessary effect of such exercise of rights by the defendants was to place beyond the reach of other creditors of the company assets that, by reason of the invalidity of the "trust receipts" as security instruments, as against persons other than the defendants, previously were within their reach. A "mere preference is not a fraudulent conveyance" (*Barishefsky* v. *Cohen*, 299 Mass. 360, 362), particularly when, as here, the preference resulted from the exercise of legal rights of the creditor against the debtor. See also *Lyon* v. *Wallace*, 221 Mass. 351, 353; *Thompson* v. *Fairbanks*, 196 U. S. 516, 523; *Coder* v. *Arts*, 213 U. S. 223; *Van Iderstine* v. *National Discount Co.* 227 U. S. 575, 583; *Irving Trust Co.* v. *Chase National Bank*, 65 Fed. (2d) 409, 410–411. Compare *Dean* v. *Davis*, 242 U. S. 438, 444.

The provisions of the State statutes — the uniform fraud-ulent conveyance law — declaring fraudulent conveyances made in certain described circumstances without regard to the "actual intent" of the person making the conveyance in each instance require proof that the conveyance was made "without fair consideration." G. L. (Ter. Ed.) c. 109A, §§ 4, 5, 6. The facts found by the auditor do not show that any of the "trust receipts" were given without "fair consideration," as those words are defined in the statute, G. L. (Ter. Ed.) c. 109A, § 3, or that "fair con-sideration" within this meaning was not given by the de-fendants for the automobiles when they took possession of them in accordance with the terms of the "trust receipts." It is unnecessary, therefore, to consider, in this aspect of the case, whether there was lack of proof of other facts essential to render any of the conveyances fraudulent.

8. The plaintiff, the trustee in bankruptcy, cannot re-cover in this action by virtue of the provisions of U. S. C. Title 11, § 107 (e).

This statute provides in part as follows: "All convey-ances, transfers, assignments, or incumbrances of his prop-erty or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this title within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration." The defendants took possession of the automobiles under the provisions of the "trust receipts" on about August 3, 1932. The com-pany gave the "trust receipts" relating to the eleven used automobiles on July 22, 1932. These dates were "within four months prior to the filing of the petition." The au-ditor's report does not disclose the precise dates when the original "trust receipts" for new automobiles were given, either those relating to the five new automobiles of which the defendants took possession or those relating to the four new automobiles for which the "trust receipts" relating to the eleven used automobiles were substituted. But the facts found by the auditor do not warrant an inference

that at any of the times in question there was "the intent and purpose" on the part of the company "to hinder, delay or defraud . . . [its] creditors, or any of them." The governing principles are substantially the same as those already discussed in relation to "actual intent . . . to hinder, delay or defraud . . . creditors" under the provisions of the laws of the Commonwealth relating to fraudulent conveyances. See *Thompson* v. *Fairbanks*, 196 U. S. 516, 523; *Coder* v. *Arts*, 213 U. S. 223; *Van Iderstine* v. *National Discount Co.* 227 U. S. 575, 583; *Irving Trust Co.* v. *Chase National Bank*, 65 Fed. (2d) 409, 410–411. Compare *Dean* v. *Davis*, 242 U. S. 438, 444.

United States Code, Title 11, § 107 (e), provides also that "all conveyances, transfers, or incumbrances of his property made by a debtor at any time within four months prior to the filing of the petition against him, and while insolvent, which are held null and void as against the creditors of such debtor by the laws of the State, Territory, or District in which such property is situate, shall be deemed null and void under the provisions of this title against the creditors of such debtor if he be adjudged a bankrupt, and such property shall pass to the assignee and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt." The transfer of title to the automobiles effected by the defendants' taking possession thereof under the provisions of the "trust receipts," on the findings of the auditor, took place "within four months prior to the filing of the petition . . . and while [the company was] insolvent." Doubtless such "trust receipts," for want of record, were "null and void" as security instruments under the laws of the Commonwealth as against the creditors of the company. See G. L. (Ter. Ed.) c. 255, § 1. Compare U. S. C. Title 11, § 107 (a). But even though, on the findings of the auditor, the transfer of title to the automobiles effected by the defendants' taking possession of the automobiles in accordance with the provisions of the "trust receipts" took place within the four months' period and while the company was insolvent, such transfer, for reasons already stated, was not "null and void" under the laws of the Commonwealth as against creditors of the company. See *Tatman* v. *Humphrey*, 184 Mass. 361,

362, and cases cited; *S. C. sub nomine Humphrey* v. *Tatman*, 198 U. S. 91, 94; *Coggan* v. *Ward*, 215 Mass. 13, 16, and cases cited.

9. The principal contention of the plaintiff, the trustee in bankruptcy — involving matters previously considered herein — is that the taking possession of the automobiles by the defendants resulted in effecting a preference voidable under U. S. C. Title 11, § 96 (see Act of May 27, 1926, c. 406, § 14, 44 U. S. Sts. at Large, Part 2, 666 [U. S. C. Sup. V]). This statute, so far as here material, is as follows:

"(a) A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication . . . made a transfer to [of] any of his property, and the effect of the enforcement of such . . . transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of recording or registering of the transfer, if by law such recording or registering is required or permitted. (b) If a bankrupt shall . . . have made a transfer of any of his property and if, at the time of the transfer . . . or of the recording or registering of the transfer if by law recording or registering thereof is required, and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the . . . transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such . . . transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

On the findings of the auditor the defendants took possession of the automobiles, in accordance with the terms of the "trust receipts," within the four months' period prior to the date of bankruptcy. These "trust receipts" were never recorded.

A. The primary question for determination is the date

as of which the "transfer" is to be judged in determining its voidable character. The "recording" of the so called trust receipts was "by law" (G. L. [Ter. Ed.] c. 255, § 1) "required," within the meaning of said § 96, for the purpose of rendering them valid as security instruments as against creditors. ' *Carey* v. *Donohue*, 240 U. S. 430, 438. *Martin* v. *Commercial National Bank of Macon*, 245 U. S. 513, 519. But, apart from the effect of these provisions relating to "recording," no voidable preference resulted from the defendants' taking possession of the automobiles in accordance with the terms of the "trust receipts" within the four months' period, and the plaintiff, the trustee in bankruptcy, could not recover in this action on the ground of a voidable preference unless such a preference was effected by the giving of the "trust receipts." See *Sexton* v. *Kessler & Co.* 225 U. S. 90, 97; *Finance & Guaranty Co.* v. *Oppenhimer*, 276 U. S. 10, 12; *Massachusetts Trust Co.* v. *MacPherson*, 1 Fed. (2d) 769; *Burrowes* v. *Nimocks*, 35 Fed. (2d) 152, 159; *Patnott* v. *Simpson & Co.* 35 Fed. (2d) 840, 841; *Johnson* v. *Burke Manor Building Corp.* 48 Fed. (2d) 1031, 1034; *In re Dunlap*, 56 Fed. (2d) 601; *American National Bank of Sapulpa* v. *Harris*, 84 Fed. (2d) 181, 182. See also *General Motors Acceptance Corp.* v. *Berry*, 86 N. H. 280, 285; *Peter Schuttler Co.* v. *Gunther*, 222 Mich. 430, 434–438. This conclusion rests upon the fact that possession is taken in pursuance of a preëxisting legal right of the defendants against the company, and, according to the law of this Commonwealth, such taking of possession relates back for its validity to the time when the right was created. See *Coggan* v. *Ward*, 215 Mass. 13, 14–15, and cases cited. As was said by Mr. Justice Holmes in *Finance & Guaranty Co.* v. *Oppenhimer*, 276 U. S. 10, 12, a "party holding security does not create a preference by taking possession under it within four months if he lawfully may under the law of the State." And see *Bank of Buffalo* v. *Aetna Indemnity Co.* 90 Conn. 415, 424, where it was said that the "exercise of a pre-existing right, lawful in the local jurisdiction, although occurring within the prescribed period, is not an illegal preference unless

made with intent to hinder or defraud creditors." No such intent is shown in the present case. See also *Fisher* v. *Zollinger,* 149 Fed. 54, 56, 58–59.

Moreover, the principle above stated is not rendered inapplicable by the requirement of the laws of the Commonwealth that the "trust receipts" be recorded in order to be valid as security instruments as against persons other than the parties thereto, where, notwithstanding want of record, for the purpose of foreclosure possession is taken lawfully under the laws of the Commonwealth within the four months' period, as was true in the present case for reasons already pointed out. *Humphrey* v. *Tatman,* 198 U. S. 91, reversing *Tatman* v. *Humphrey,* 184 Mass. 361. See also *Thompson* v. *Fairbanks,* 196 U. S. 516. The bankruptcy statute considered in the cases just cited did not contain the provision that "Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required or permitted." This provision except for the words "or permitted" added by Act of May 27, 1926, c. 406, § 14, 44 U. S. Sts. at Large, Part 2, 666 — was incorporated in the bankruptcy statute (see U. S. C. Title 11, § 96 [a]) by the Act of February 5, 1903, c. 487, § 13. 32 U. S. Sts. at Large, Part 1, 799. The provision, however, in a case to which it was applicable merely extended backward the period — beyond the four months before the filing of the petition — in which the making of a transfer might be deemed to constitute a voidable preference. It did not change the date as of which it is to be determined whether the elements of a voidable preference were present — here the date or dates when the "trust receipts" were given. *In re Klein,* 197 Fed. 241, 248–250. *Davis* v. *Hanover Savings Fund Society,* 210 Fed. 768, 773–774. *Deupree* v. *Watson,* 216 Fed. 483, 489–490. 4 Remington, Bankruptcy (4th ed.), § 1790, p. 750. Nor was such a change effected by the provision incorporated in the bankruptcy statute (see U. S. C. Title 11, § 96 [b]) by the Act of June 25, 1910, c. 412, § 11, 36 U. S. Sts. at Large, Part 1, 842, whereby

it was provided that if the stated elements of a preference were present "at the time of the . . . recording or registering of the transfer if by law recording or registering thereof is required" such transfer is voidable. This language makes no reference to the time at which possession is taken for the purpose of foreclosure in conformity to State law, but such a case remains subject to the provision that to render a transfer voidable as a preference the elements of a preference must exist "at the time of the transfer," which, by the law of the Commonwealth, as already pointed out, is the time of the giving of the security instrument, valid between the parties thereto, in pursuance of which possession of the property is taken for foreclosure. 4 Remington, Bankruptcy (4th ed.) § 1799. Compare *Blanchard* v. *Cooke*, 144 Mass. 207, 227.

B. The essential elements of a voidable preference resulting from a transfer made within the four months' period are (a) that the transferor is "insolvent," (b) that the effect of a transfer "will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class," and (c) that the person receiving it "shall then have reasonable cause to believe that the enforcement of such . . . transfer would effect a preference." U. S. C. Title 11, § 96 (b). See *Putnam* v. *United States Trust Co.* 223 Mass. 199, 204–205; *Abele* v. *Beacon Trust Co.* 228 Mass. 438, 440. No contention is made by the plaintiff, the trustee in bankruptcy, that these elements are proved to have been present at the time or times when the "trust receipts" relating to the new automobiles were given, either those under which possession of the automobiles was taken by the defendants or those for which the "trust receipts" relating to the used automobiles were substituted on July 22, 1932.

C. The question is, therefore, whether the facts expressly found by the auditor and permissible inferences therefrom warranted a finding that all the essential elements of a voidable preference were present on July 22, 1932, when the "trust receipts" relating to the eleven used automobiles were given.

19

There is no general finding of the auditor for the plaintiff importing the finding of the subsidiary facts necessary to support it not inconsistent with the subsidiary facts expressly found. See *Murphy* v. *Smith*, 307 Mass. 64, 69. The finding of the judge for the plaintiff cannot stand unless warranted by the subsidiary findings of the auditor.

The primary issue on this branch of the case is whether on July 22, 1932, the company was "insolvent" within the meaning of that word as used in the governing bankruptcy statute. As the word is there used a person is deemed to be "insolvent" "whenever the aggregate of his property," with exceptions not here material, "shall not, at a fair valuation, be sufficient in amount to pay his debts." U. S. C. Title 11, § 1. This is a materially different definition of insolvency from that in the bankruptcy act of 1867 under which a person was deemed to be insolvent when he was unable to pay his debts in the ordinary course of business. See *Pirie* v. *Chicago Title & Trust Co.* 182 U. S. 438, 450. See also *Continental Illinois National Bank & Trust Co.* v. *Chicago, Rock Island & Pacific Railway*, 294 U. S. 648, 672.

The auditor made no express finding that on July 22, 1932, the company was "insolvent" and no findings as to the value of its property or the amount of its debts on that date. In this respect the present case is materially different from *Jacobs* v. *Saperstein*, 225 Mass. 300, and *Oshry* v. *Haddad*, 265 Mass. 199, relied on by the plaintiff. And the fact that the business of the company was diminishing during the months of July and August of the year in question — a normal condition in the automobile trade — in itself had no tendency to show that the company was insolvent at any particular time during those months. See *Stitzer Hotel Co.* v. *Beyer*, 55 Fed. (2d) 620, 621.

The findings of the auditor as to the financial condition of the company on July 22, 1932, are stated in terms of what the defendants knew or should have known. But, doubtless, these findings warranted the inference that this condition was in fact as the defendants knew or should have known it to be. The defendants, on the date in question, knew that the

company "was low on funds and needed what cash it had to meet its payroll; and had used some of the cash belonging to the defendants for that purpose," that is, cash received by the company from the sale of automobiles covered by "trust receipts." The defendants also, on the date in question, "knew, or should have known, that the financial condition of the . . . [company] was poor but not necessarily insolvent, though the defendants believed, and had a right to so believe, that further capital was going to be put into the business of the . . . [company]." Whether these findings would have warranted the inference that the company was unable to pay its debts in the ordinary course of business — the earlier test of insolvency — need not be determined. Even if such inability to pay debts was established it would not follow as a reasonable inference therefrom that the company did not have an excess of assets over liabilities — particularly at a season of the year when, in the automobile trade, business normally was diminishing. So to hold would be to disregard the change made in the definition of "insolvency." As was said in *Pirie* v. *Chicago Title & Trust Co.* 182 U. S. 438, 451: "At times a debtor's property, though amply sufficient in value to discharge all his obligations, may not be convertible without sacrifice into that form by which payments may be made. The law regards that possibility." See also *In re Utrecht Coal Co. Inc.* 63 Fed. (2d) 745, 746; *National Refining Co.* v. *Pennsylvania Petroleum Co.* 66 Fed. (2d) 914, 919. And the facts found fall short of showing that the company's property at a fair valuation did not exceed the amount of its debts. The fact that the defendants knew or should have known that the financial condition of the company was "poor but not necessarily insolvent," did not warrant the inference that the company was in fact insolvent. Indeed, if the defendants' knowledge, real or imputed, is to be taken as representing the actual fact as to the financial condition of the company — a fact as to which there is no express finding by the auditor — the company was "not necessarily insolvent." See *Jump* v. *Bernier*, 221 Mass. 241, 247–248. Nor does the fact that "further capital was going to be put into the business of

the . . . [company]," or that such was the expectation warrant an inference of present insolvency.

The finding of the auditor that the company was insolvent, at the time the defendants took possession of the automobiles, on or about August 3, 1932, did not warrant an inference that the company was insolvent on July 22, 1932. There are no findings as to the value of the property of the company or the amount of its debts at the later date. The general finding that the company was then insolvent, while importing that its property at a fair valuation was not then sufficient in amount to pay its debts, does not import any finding as to the extent of the deficiency. For aught that appears it may have been so slight that it resulted from the operations of the company during the period after July 22, 1932, while its business was continuing to diminish. An inference to the contrary was not warranted. Furthermore, on the facts found it does not appear that the adjudication of bankruptcy on August 5, 1932, if the proceeding was involuntary, was conclusive upon the defendants as to the insolvency of the company at any time, as an element of proof of a voidable preference. *Gratiot County State Bank* v. *Johnson,* 249 U. S. 246. Even if it be assumed that the adjudication is evidence of insolvency on the date of adjudication, it is subject to a like limitation to that upon the finding of the auditor that the company was insolvent on or about August 3, 1932. But it does not appear that the proceeding was involuntary, and insolvency is not essential to voluntary bankruptcy. *In re Fox West Coast Theatres,* 88 Fed. (2d) 212, 221, certiorari denied, *sub nomine Talley* v. *Fox Film Corp.* 301 U. S. 710.

Since a solvent debtor cannot make a voidable preference, *Kaufman* v. *Tredway,* 195 U. S. 271, and since a finding was not warranted that the company was insolvent when it gave the "trust receipts" on July 22, 1932, the plaintiff, the trustee in bankruptcy, has failed to prove that the giving of the "trust receipts" constituted a voidable preference.

Third. Since, for the reasons stated, a finding for the plaintiff was not warranted by the facts found by the auditor, and consequently the order for judgment for the plain-

tiff was erroneous as matter of law, the defendants' exception to such order must be sustained. So also the implied denial of the defendants' requests for rulings that the plaintiff was not entitled to recover on the first, second, third and fourth counts of the declaration, respectively, was erroneous, and the defendants' exception to such denial must be sustained. Correct disposition of these requests would have been decisive of the case in favor of the defendants. It is unnecessary to consider whether there was error in the denial of other requests for rulings. The findings of the auditor show that judgment ought to be entered for the defendants. G. L. (Ter. Ed.) c. 231, § 124. *Andrade* v. *Hanley*, 289 Mass. 335, 337. *Forbes* v. *Woburn*, 306 Mass. 67, 74.

> *Exceptions sustained.*
> *Judgment for the defendants.*