CHARLES H. COBB *vs.* LIBRARY BUREAU.

WALTER R. WASHBURN *vs.* SAME.

Suffolk.     March 7, 1928. — September 20, 1928.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Equity Jurisdiction,* Specific performance, Tender. *Time. Contract,* Construction.

In a suit in equity for specific performance of a contract relating to subscription for shares of stock in a corporation and delivery of shares upon payment of a certain sum, where it appeared that payment and delivery were mutual and dependent conditions, it *was stated* that, in such circumstances, a strict tender according to common law was not essential to the right of the plaintiff to maintain his suit.

A notification by the plaintiff by letter to the defendant at Tonawanda in the State of New York that he had sent to a banking institution at Buffalo in the State of New York certain sums which he claimed amounted, together with credits already allowed to him on his subscription contract, to the amount of the full payment for the shares in question, that he requested delivery of the shares, and that if the tender was not accepted and delivery made before June 16, current, the bank was to return the money and he should feel at liberty to proceed at law, where it appears that Buffalo was not the home office of the defendant, was not a sufficient offer to satisfy the requirements of law or of equity in the suit above described.

The agreement of which the plaintiff in the suit above described was seeking specific performance was made with the defendant by the plaintiff, a vice-president of the defendant, and two other vice-presidents, as a modification of a former stock subscription contract, and was that they were "to be given the absolute privilege of paying enough additional cash to make with the credits to January 1, 1927, full payment for one-half the stock subscribed for by them and receiving such stock and . . . [the owner of controlling shares of stock] will, if so requested, pay them $40. per share for it on January 1, 1927, without affecting the balance of their Stock Subscription Contract." The plaintiff made a tender of money in June, 1927. *Held,* that

(1) In the circumstances, although the proceedings were in equity, time was of the essence of the contract;

(2) January 1, 1927, was a controlling date, and tender thereafter was ineffectual;

(3) The suit must be dismissed.

Two BILLS IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on July 1, 1927, and by order of court transferred to the Superior Court on September 14, 1924, seeking specific performance of contracts described in the opinion.

The "three vice-presidents agreement," referred to in the opinion, was in the following language: "The three Vice-Presidents to be given the absolute privilege of paying enough additional cash to make with the credits to January 1, 1927, full payment for one-half the stock subscribed for by them and receiving such stock and Rand, Jr. will, if so requested, pay them $40. per share for it on January 1, 1927, without affecting the balance of their Stock Subscription Contract . . . ."

In the Superior Court, the suits were heard by *Morton,* J. Material facts are stated in the opinion. The judge ruled that the suits should be dismissed and reported them to this court, on the terms stated in the opinion, for determination.

*E. A. Whitman,* (*L. Weyburn* with him,) for the plaintiffs.

*L. Powers,* for the defendant.

WAIT, J. The plaintiffs by their bills in equity seek the specific performance of stock subscription contracts. Earlier bills for the same purpose were dismissed because brought prematurely. The decision is reported in 260 Mass. 7. The terms of the contracts and the material facts set out in that opinion need not be repeated here. In substance we held that, although the plaintiffs had ceased to be in the employ of the defendant after January 31, 1926, the defendant had failed in its effort to exercise the option of cancellation given it by the original agreement in that event and that the original subscription agreements dated January 2, 1925, were still in force but as modified by the so called "three vice-presidents agreement" of October 27, 1925, approved and "adopted" by the defendant on November 2, 1925. We held, further, that the defendant had not broken the modified contract at the time when the bills were brought, so that the rights claimed by the plaintiffs had not accrued, and the decrees dismissing the bills had been made properly.

After the final decrees after rescript in those cases were

entered, the plaintiffs, on June 22, 1927, made tenders of certain amounts to the defendant at Tonawanda, New York, and demanded delivery of stock certificates. The demands were refused, and these bills were filed on July 1, 1927.

In the Superior Court the judge ruled that neither plaintiff was entitled to the relief sought, and reported the cases. If he was right, then decrees are to enter dismissing the bills with costs; if he was wrong, then a decree is to be entered for each plaintiff, directing the delivery to Cobb of 750 shares and to Washburn of 1500 shares of the common stock of the defendant, upon payment, respectively, of $12,000 and $25,000, less such of the credits and payments shown in the report as this court decides are applicable to the supplementary contracts of October, 1925.

The contracts provided that in case the plaintiffs ceased to be officers or employees of the defendant or its business successors or assigns from any cause other than death or physical disability before completion of payment for the stock, the defendant could either cancel the agreement on repaying all amounts then paid upon the purchase price, or could sell the stock or the subscription rights in specified ways, paying the overplus, if any, beyond the liquidation of any unpaid balance of the purchase price to the subscriber, who was to remain liable on the contract for any amount unpaid. No express provision was made to meet the situation if the defendant did not exercise one or other of these rights. This, however, is the situation which has happened. The plaintiffs ceased to be employees for causes other than death or disability. The defendant endeavored to use the option of cancellation, but failed to comply with its conditions. That left the plaintiffs entitled to the stock if they could meet the requirements for payment. By the original contract the subscriber agreed to purchase a definite number of shares — Cobb 250 and Washburn 500*— and to pay $100 a share in the manner set forth, and the company agreed to issue and sell the stock and to receive payment as provided in the agreement. Each subscriber bound himself to pay from his

*By subsequent arrangement, not here important, these figures became 1500 and 3000 shares of no par value stock.

individual resources six and one quarter per cent of his total subscription in each year, and to apply thereto certain extra compensation provided for while in the defendant's employ. If they failed, then the defendant, on thirty days' notice, could cancel the agreement and declare the whole unpaid balance of the principal due and payable at once, and could sell the stock or the subscription rights in specified ways; becoming itself purchaser if it wished, the subscribers remaining liable for any amount unpaid.

The agreements expressly provided that they were not contracts of employment, and did not affect the defendant's right to cease to employ at any time with or without cause; and, further, that they should not affect its right to reorganize or the right of the corporation or stockholders to take such action regarding the affairs of the company as to it or them seemed good. It seems that, under such an agreement, after employment had ceased and the option to cancel or sell had not been exercised by the defendant, the subscriber would have been entitled at any time on paying the full price to receive the stock. However that may be, it is certain that after the contract had been amended by the "three vice-presidents agreement" the subscribers were so entitled as to one half the number of shares. By that modifying agreement, which was made before they had ceased to be employed, the three vice-presidents acquired "the absolute privilege" of paying at one time sums which with such credits as they had acquired up to January 1, 1927, would equal full payment for one half the stock subscribed, and of receiving the stock, and the defendant's consent to selling it to Rand, Jr., without affecting the balance of their contracts.

It is the contention of the plaintiffs that they have done what they were called on to do to entitle themselves to delivery. They ask that the defendant be ordered to take the price and make delivery.

The defendant contends that they have not. It argues that neither in time, place, amount nor form was there a sufficient tender made in June of 1926, nor in time nor amount a sufficient tender in June of 1927 to put the defendant in default.

These are proceedings in equity.  Payment and delivery were mutual and dependent conditions.  Payment was not a condition precedent to delivery of the stock.  A strict tender according to common law is not essential to the rights of the plaintiffs to maintain their bills in such circumstances. *Irvin* v. *Gregory,* 13 Gray, 215.  *Hapgood* v. *Shaw,* 105 Mass. 276.

They do enough if they show that before filing their bills they offered to do all they were bound to do, and, thereafter, stand ready to make such payment as the decree requires for performance on their part.  *Cole* v. *Killam,* 187 Mass. 213.

In June of 1926 the plaintiffs notified the defendant at Tonawanda, New York, that they had sent to a banking institution at Buffalo, New York, certain sums which they claimed amounted, together with credits already allowed to them on their subscription contracts, to the amount of the full payment for the one half of the shares subscribed and covered by the "three vice-presidents agreement"; and they requested delivery of the shares (750 and 1500 respectively). The banking institution notified the defendant that it held the money in accord with the terms of the letters sent the defendant by the plaintiffs and, on presentation of the certificates at its office, it would act upon the instructions.  The plaintiffs' letters had stated that if the tenders were not accepted and delivery made before June 16, current, the bank was to return the money and they should feel at liberty to proceed at law.  The defendant ignored the letters and did nothing.  Thereupon the plaintiffs filed their earlier bills.  These were not sufficient offers to satisfy the requirements of law or of equity in the present cases.  Manifestly they did not constitute tenders at common law.  There was no presentation of legal tender money.  See *Mondello* v. *Hanover Trust Co.* 252 Mass. 563, 567.  The report does not make clear whether, in June of 1926, Tonawanda was the home office of the defendant; but it is clear that Buffalo was not.  The plaintiffs could not require the defendant to go to Buffalo and make delivery at a bank there, on or before a specific date.  Such action does not constitute a good offer even in equity.  No new offers were made before January 1,

1927.   It was not until June of 1927 that legal tender money was tendered, and new demands were made.

The rule that, in equity, time is not of the essence in contracts for the sale or exchange of land, *Dennett* v. *Norwood Housing Association, Inc.* 241 Mass. 516; *Mansfield* v. *Wiles,* 221 Mass. 75, 81, 82, does not apply universally.   Time is of the essence where an option exists, *Morgan* v. *Forbes,* 236 Mass. 480, 483, and cases there cited, or where manifestly in the circumstances a particular moment is of controlling importance.   *Mansfield* v. *Wiles, supra.*

Here, January 1, 1927, was controlling.   That date determined the rights of all parties.   We think time was here of the essence of the contract, and that action in June, 1927, was too late.

It is unnecessary to determine whether the offers were sufficient in amount; for, if too late to sustain the plaintiffs' bills, the judge was right in his ruling, and the order must be that the bills be dismissed with costs.

*So ordered.*