CHARLES H. COBB *vs.* LIBRARY BUREAU.

WALTER R. WASHBURN *vs.* SAME.

Suffolk.    April 3, 1929. — September 9, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Contract,* Implied, Performance and breach.

A stockholder in and vice-president of a corporation subscribed for further shares and agreed to pay a certain sum therefor in a manner set out in a contract in writing with the corporation, a certain amount to be paid in cash and the corporation at the end of each calendar year to credit or pay in cash to the subscriber, as extra compensation for his services during the preceding calendar year, a stated percentage of the subscription, which was to be applied upon the purchase price of the shares subscribed for, provided the subscriber was not in default in his payments, so long as any balance remained unpaid and the subscriber still was in the active employ of the company. The contract contained nothing which exonerated the subscriber from his obligation to pay for the stock, even though his employment were terminated. Certain options were given to the corporation in such an event. The subscriber's employment by the corporation having been terminated, the corporation purported to exercise options given it by the contract, but such attempts were ineffectual. The subscriber then ceased making payments on the stock and the corporation thereupon became unwilling to receive any further payments or to deliver any stock. The subscriber sought, in an action of contract for money had and received, to recover cash he had paid, credits which had been allowed him, and interest. *Held,* that

(1) Having failed to make the required payments, the subscriber was precluded from recovery by the provisions of the contract;

(2) It was immaterial whether the subscriber acted honestly and in good faith: he was bound by what turned out to be a hard bargain, but one which he made voluntarily and with full understanding.

TWO ACTIONS OF CONTRACT, described in the opinion. Writs dated November 7, 1928.

In the Superior Court, the actions were presented on agreed facts to *Whiting,* J., who reported them without decision under G. L. c. 231, § 111. Material facts are stated in the opinion.

*E. A. Whitman,* for the plaintiffs.

*M. F. Weston,* for the defendant.

CROSBY, J. These are actions of contract for money had and received by the defendant for the plaintiffs' use. The cases were submitted to a judge of the Superior Court on a statement of agreed facts for a decision on the merits, and are before us on his report without decision, in accordance with G. L. c. 231, § 111. Both cases depend upon substantially the same facts with minor differences. The subject matter has been previously before this court in suits in equity for specific performance, and are reported in 260 Mass. 7, and 264 Mass. 431. In the earlier suits for specific performance it was held that they could not be maintained as the bills had been prematurely brought; and in the later suits the plaintiffs' tender of moneys to make up the agreed price of stock came too late. The bills in both cases accordingly were dismissed.

The present actions are brought to recover amounts alleged to be respectively due the plaintiffs from the defendant under certain contracts entered into between the parties. The pertinent facts are recited in 260 Mass. 7, beginning on page 10, as follows: "The plaintiffs on January 2, 1925, then being substantial stockholders in, and two of the three vice-presidents of, the defendant corporation, each subscribed for shares of the common stock of the Library Bureau and agreed to pay therefor the sum of $100 per share in the manner set forth in a written contract, and the company agreed to issue and sell the said stock and receive payment for the same as provided in the agreement, and subject to all the terms thereof. Under these contracts each plaintiff was in each calendar year to pay in cash six and one quarter per cent of the total amount of his subscription; and the company at the end of each calendar year undertook and agreed to credit or pay in cash to the subscriber, as extra compensation for his services during the preceding calendar year, six and one quarter per cent of the subscription; this was to be applied upon the purchase price of the shares subscribed for, provided the subscriber was not in default in his payments, so long as

any balance remained unpaid and the subscriber was still in the active employ of the company. After full payment, the subscriber was entitled to receive the stock issued free from all restrictions, and the same dividend on his stock as other holders of common stock received. But so long as any part of the subscription was unpaid, and the option in the agreement remained in force, the stock subscribed for, the subscription, or any right thereunder, could not be assigned, sold, pledged, or otherwise transferred by the subscriber except with the consent of the board of directors."

The agreement further provided: clause II: ". . . In case the Subscriber shall cease to be an officer or employee of the Company or its business successor or assigns from any cause whatsoever other than death or physical disability prior to the completion of payment of the above subscription, said Company shall have the following options, one or the other to be exercised within sixty (60) days from the date of such termination: (1) Of cancelling this Agreement by returning and paying to the Subscriber all the amounts theretofore paid upon the purchase price of the shares subscribed for; or (2) Of selling the stock subscribed for or the subscription rights hereunder at any broker's board or at public auction in the City of Boston, Massachusetts, at any time or times without advertisement or notice, and with the right to the Company to become a purchaser thereof freed and discharged of any equity of redemption, and applying the net proceeds to the liquidation of any unpaid balance hereunder, returning the overplus, if any, to the Subscriber; and the Subscriber shall still remain liable for any amount so unpaid"; clause IV: "If the Subscriber shall fail to pay, in any calendar year, the amount required to be paid by him in cash hereunder the Company shall have the right at any time on thirty days' notice in writing to the Subscriber by mail, to cancel this agreement and to declare the whole unpaid balance of the principal due and payable at once; and may sell the stock subscribed for or the subscription rights hereunder at any broker's board or at public auction in the City of Boston, Massachusetts, at any time or times, without ad-

vertisement or notice, and with the right to the Company to become a purchaser thereof, freed and discharged of any equity of redemption and apply the net proceeds to the liquidation of any unpaid balance hereunder, returning the overplus, if any, to the Subscriber, and the Subscriber shall still remain liable for any amount so unpaid, this being cumulative and not exclusive of any other rights which the Company may have hereunder"; clause V: "In the event of a cancellation of this agreement in any manner above provided or in the event of a termination of the Subscriber's employment by the Company from death or any other reason, the Subscriber's account shall be credited with only a pro rata proportion of the extra compensation payment for the calendar year in which such cancellation or termination shall occur, representing the period from the first of the calendar year to the date of such cancellation or termination of employment, and thereafter all credits for extra compensation shall cease." In clause VII of the contract it is stated that "The object of this contract . . . [is] to cement the relations between" the plaintiffs and the defendant.

It is agreed that payments were made by the plaintiffs under the contracts during the year 1925, and credits entered by the defendant upon its books. At about the time of the execution of the contracts the defendant set aside, that is, refrained from taking subscriptions for or issuing to any other persons out of its authorized and unissued capital stock, sufficient stock to meet the obligation of the agreements. The capital structure of the defendant later was altered and new stock to the amounts called for by the agreements as applicable to the changed situation similarly was set aside, and such stock never has been issued or otherwise disposed of.

On January 31, 1926, the plaintiffs ceased to be officers and employees of the defendant within the meaning of the extra compensation agreements. On March 31, 1926, the defendant mailed letters to the plaintiffs enclosing checks and attempting to exercise the option given to the defendant by clause II (1) of the extra compensation and subscription

agreements.   These letters were not received until April 3, 1926, and the plaintiffs promptly returned the checks.   It was held in 260 Mass. 7, 14, that this attempt by the defendant to exercise the option failed because it came too late, was for an insufficient sum, and, being made by check, was not a legal tender.

On April 26, 1926, the defendant again attempted to exercise the option under clause II (1) of the agreement and made legal tender to the plaintiffs.   This tender likewise came too late and was rejected by the plaintiffs.   On June 11, 1926, the plaintiffs notified the defendant at Tonawanda, New York, that they had sent to a bank in Buffalo, New York, certain sums which they contended amounted, together with credits already allowed to them on their subscription contracts, to full payment for their one half of the subscription shares covered by the agreement of October 27, 1925, and requested delivery of these shares.   The Buffalo bank notified the defendant that it held this money and upon presentation of the stock at its office would act upon the instructions.   The defendant ignored this offer.

On June 23, 1926, the plaintiffs filed bills in equity for specific performance of the contract as to the one half of the stock covered by the agreement of October 27, 1925.   The bills were dismissed on the ground that they were prematurely brought.   260 Mass. 7, 14.   On June 22, 1927, the plaintiffs made legal tender to the defendant of the sums of $9,176.26 and $18,440 respectively.   The purpose of each tender was to entitle the plaintiffs to receive one half of the stock.   On July 1, 1927, the plaintiffs again brought bills in equity for the specific performance of the contract as to the one half of the stock.   These bills were dismissed on the ground that the offer of June 11, 1926, was defective in requiring the defendant to make delivery at Buffalo, and that the offer of June 22, 1927, came too late.   264 Mass. 431, 435, 436.

After December 31, 1925, the plaintiffs made no payments on account of the contracts, and made no offers of payment other than those above recited.   The defendant has ceased to do business but has not been legally dissolved.   It is not

now willing to receive any payments or to deliver any stock. The amounts claimed by the plaintiffs in this action are set forth in the footnote.*

An action for money had and received lies to recover money which should not in justice be retained by the defendant, and which in equity and good conscience should be paid to the plaintiff. *Wiseman* v. *Lyman,* 7 Mass. 286, 288. *Claflin* v. *Godfrey,* 21 Pick. 1, 6. *Rabinowitz* v. *People's National Bank,* 235 Mass. 102, 103.

The defendant contends that the plaintiffs by their wilful default have lost their rights under the contract, and that there can be no recovery in quasi-contract by a plaintiff who has wilfully deviated from the terms of an express contract. This rule rests upon an intentional departure or wilful default in the performance of a substantial stipulation of the contract. *Sipley* v. *Stickney,* 190 Mass. 43, 46. *Lynch* v. *Culhane,* 237 Mass. 172, 175. *Smedley* v. *Walden,* 246 Mass. 393, 400. "Wilful implies an action by the will or mind; it means to do the act by design, intentionally, or with a set purpose." *Commonwealth* v. *Nichols,* 257 Mass. 289, 298.

The contracts between the corporate employer and its employees were for the purchase of stock on clearly defined terms. They contain no option for the benefit of the plaintiffs in the event of their being discharged by the defendant. The contracts in clause II expressly reserve rights of option to the defendant alone. There is nothing in the contracts which exonerates the plaintiffs from their obligation set forth in clause I of the contracts to pay for the stock even though their employment be terminated by the defendant. See also clause IV of the contract. This court cannot make a contract for the parties. Its duty is to construe the contract which they fully understood and entered into voluntarily.

|  | Cobb | Washburn |
|---|---|---|
| *Cash paid prior to December 31, 1925 .......... | $1,562.50 | $3,125.00 |
| Credits made by defendant on account of subscription ........................... | 1,562.50 | 3,125.00 |
| Interest credit for 1925 ....................... | 52.65 | 18.74 |
| Credit claimed for January, 1926 ............. | 130.21 | 260.42 |
| Interest claimed for January, 1926 ............ | 15.88 | 31.35 |
|  | $3,323.74 | $6,560.51 |

The plaintiffs were not misled by the defendant. The contract was plain in its recitals of the obligations imposed upon the plaintiffs. If their failure to perform those obligations is a bar to the maintenance of these actions, it is immaterial whether they act honestly and in good faith or otherwise. It is settled that, if a vendee fails to perform his part of a conditional sale contract, he cannot relieve himself of the consequences by showing he acted in good faith. So, too, when one bargains for the purchase of land and makes a payment on account, he cannot recover that payment simply because for some reason he is unable to get expected funds to make other payments required of him according to the contract. *Keefe* v. *Fairfield*, 184 Mass. 334. *King* v. *Milliken*, 248 Mass. 460.

The exception to the general rule that a building contractor, who has entered into an express contract with an honest intention to perform and substantially executes his part of the contract according to its terms, may recover in an action upon a *quantum meruit*, although his default would bar recovery upon the express contract, *Hayward* v. *Leonard*, 7 Pick. 180, *Bowen* v. *Kimbell*, 203 Mass. 364, *Cutter* v. *Arlington Construction Co.* 268 Mass. 88, and cases cited, is not applicable to the cases at bar.

We are constrained to hold that as the plaintiffs have failed to make the required payments to the defendant they are precluded by the terms of the contracts from recovering any of the items claimed by them. They are bound by what turns out to have been a hard bargain but one which they fully understood and made voluntarily. *Colonial Development Corp.* v. *Bragdon*, 219 Mass. 170, 174.

In each case the entry must be

*Judgment for the defendant.*