## ROIG v. ELECTRICAL RESEARCH PRODUCTS, Inc.

### No. 2622.

Circuit Court of Appeals, First Circuit.
April 7, 1932

. James E. Duross, of New York City (Gonzalez, Fagundo & Gonzalez, Jr., of Humacao, Porto Rico, on the brief), for appellant.

John Carr, of Boston, Mass. (Francis B. Turner, of Waltham, Mass., and Abbott, Drew, Rogerson & Carr, of Boston, Mass., on the brief), for appellee.

Before BINGHAM and WILSON, Circuit Judges, and MORTON, District Judge.

MORTON, District Judge.

This is an action upon a contract; it was tried jury waived in the District Court; the plaintiff recovered judgment, and the defendant appealed. The trial judge made full findings of fact and stated briefly his conclusions of law upon the facts found.

The plaintiff manufactures and sells apparatus for exhibiting talking motion pictures. The defendant owns and operates a theatre at Humacao, P. R. He made with the plaintiff a preliminary written contract for the purchase of one of its machines. In its material parts, the contract was as follows: "Referring to our correspondence relative to the installation of electrical sound reproducing equipment in your Oriente Theatre in Humacao, Porto Rico, we desire to set forth herewith our understanding of the arrangement between us. 1. You hereby place an order for a 2-S Equipment to be installed in the above mentioned theatre, such order to be covered by an agreement and lease on a form for Porto Rico, which you agree to sign for this installation. This form will be similar to our standard form of agreement for the United States, copy of which is enclosed, with such modifications as may be necessary to include special conditions and so as to conform, in the opinion of our counsel, to the laws of Porto Rico.

"Subject to the conditions herein set forth, this equipment will be shipped from our warehouse on or about September 14th, 1929.

"2. The regular charges fixed by us for furnishing and installing such equipment are payable, ten percent (10%) as an initial payment upon signing this general agreement, fifteen percent (15%) within three days after the completion date, and the remaining seventy-five percent (75%) in twelve monthly notes with interest at the legal rate obtaining in Porto Rico.

"In addition to these payments, there will be a weekly charge to cover servicing the equipment. We propose that this latter charge shall be equitably averaged over the various equipments which we from time to time have under lease in Porto Rico."

"3. We propose to have the business in connection with the leasing and installation of equipments in Porto Rico carried on through a subsidiary company, and we reserve the right to assign all of our right, title and interest in this agreement and lease covering each installation executed by such subsidiary. Whatever subsidiary company

we may use for the purposes above-mentioned, we assure you that we will guarantee the performance by it of all obligations which it enters into with you.

"If the agreement outlined in this letter is acceptable to you, kindly indicate your acceptance on both copies of this letter and return them to us, one of which, when completely executed by us, will be returned to you."

A copy of the United States standard form referred to in the letter was sent to the defendant as stated. Both parties understood that this was a preliminary agreement, putting them into contractual relations with each other as therein stated, and that it was to be followed by a fuller and more formal instrument; it is referred to by the parties as the "binder contract" or "binder."

On October 27, 1929, the installation of the apparatus in the defendant's theater was completed, and it was put into use. The definitive agreement remained in abeyance, however, until some time in March, 1930, when the plaintiff for the first time presented a draft of it to the defendant for signature. The defendant at once objected to the draft, saying in his letter to the plaintiff under date of March 19, 1930: "Inasmuch as this document tries to impose upon me obligations that were not specified at the time of the first deal, and that it also calls for payments of lease and service that were not agreed upon originally, my proposal to you now is that you return such monies as I have paid to you amounting to $2,700, that is, $1,080 paid in New York and $1,620 here later, and you, of course, to take your apparatus"; and in his letter of September 6, 1930, that "I have refused to sign the contract because it contains conditions which were not agreed upon and which are prejudicial to my interests." The plaintiff insisted upon the draft tendered by it, and ultimately brought the present action. The complaint is based on the contract of August 29, 1929, without the United States standard form. It alleges as breaches thereof the defendant's failures to pay the installments due and the charges for service. It is found as a fact that the defendant did not pay the installments and charges sued for.

■ Where parties make a preliminary agreement which deals with the subject-matter in a general way, and provides that essential details shall be elaborated and defined in a later instrument, the parties are bound to what is expressly said in the preliminary contract, and to what is included in it by rea-sonable implication. Sanders v. Pottlitzer Bros. Fruit Co., 144 N. Y. 209, 39 N. E. 75, 29 L. R. A. 431, 43 Am. St. Rep. 757. This latter is, to some extent at least, a question of fact depending on the nature of the business to which the contract relates, the ordinary usage therein, the circumstances under which the parties dealt, and perhaps upon other surrounding facts. Neither party is bound to accept in the formal instrument anything to which he has not already assented, either expressly or by implication, in the preliminary agreement. Sanders v. Pottlitzer Bros. Fruit Co., supra.

■ The District Judge found that the draft tendered to the defendant conforms to the requirements of the "binder." The only question now open is whether this finding was unsupported by the evidence and was erroneous as a matter of law. A comparison of the draft with the "binder" and the United States form referred to therein shows that the draft contains provisions clearly not included, either expressly or by implication, in the "binder" and the United States form. These differences are of such character that they do not rest, and cannot be found to rest, on differences in conditions between the United States and Porto Rico. (1) The United States form permitted the defendant to terminate the "lease" so called at the end of two years; the draft submitted changed this period to three years. (2) The United States form has no provisions with respect to liquidated damages; the draft contains drastic provisions relative to liquidated damages. (3) The draft provides that the time of all payments shall be of the essence of the contract; there is no such provision in the "binder" or the United States form. (4) In the "binder" the plaintiff agreed to guarantee the formal lease which was to be executed by its subsidiary; the draft contained no such guaranty.

There is no dispute about the existence of these differences. It seems to us clear that they are material and justified the defendant's refusal to execute the draft tendered to him by the plaintiff. It is unnecessary to decide whether the servicing charges, insisted upon by the plaintiff and objected to by the defendant, were within the terms of the "binder," or whether, as we incline to think, that provision of the "binder" was too indefinite to put the parties into contractual relations upon it without further agreement on the point. See Varney v. Ditmars, 217 N. Y. 223, 111 N. E. 822, Ann. Cas. 1916B, 758; Silver v. Graves, 210

Mass. 26, 95 N. E. 948. It follows that the plaintiff by insisting on the draft and refusing to modify it broke the contract.

A party cannot recover upon a contract as to which he is in default on a material and nonseverable provision. McNeal-Edwards Co. v. F. L. Young Co. (C. C. A.) 51 F.(2d) 699, discussing authorities. The provision in the "binder" looking to a definitive agreement was of that character. This appears from the "binder" itself, which says, "You hereby place an order for a 2-S Equipment to be installed in the above-mentioned theatre, such order to be covered by an agreement and lease on a form for Porto Rico which you agree to sign for this installation." It was not the intention of the parties that their permanent relations should rest upon the "binder," as the plaintiff by suing on it alone in effect claims. The plaintiff's refusal to make a proper "agreement and lease" as called for by the "binder" avoided the sale and gave the defendant the right to rescind. Neither the installments of the purchase price nor the servicing charges are recoverable. As the breach was willful, the plaintiff is not entitled to recover on a quantum meruit. Bowen, Tr., v. Kimbell, 203 Mass. 364, 371, 89 N. E. 542, 133 Am. St. Rep. 302; Cobb v. Library Bureau, 268 Mass. 311, 167 N. E. 765. It could not by wrongfully refusing to go on with the special contract impose upon the defendant a different obligation to pay for the use of the machine.

The judgment of the District Court is vacated, and the case is remanded to that court, with directions to enter judgment for the defendant, the appellant, with costs in both courts.