THOMAS P. NICHOLS & SON COMPANY *vs.* THE NATIONAL CITY BANK OF LYNN & another.

Essex. February 1, 1943. — March 30, 1943.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Contract,* Construction, Implied, To pay debt of another. *Bank and Banking. National Bank. Federal Deposit Insurance Corporation. Pledge. Fraud. Fraudulent Conveyance.*

Under an unambiguous contract made in good faith between a solvent insured bank in process of voluntary liquidation and the Federal Deposit Insurance Corporation within the powers given it by § 12B (n) (4) of the Federal reserve act as amended, by which the corporation lent the bank a large sum of money for payment to an insured trust company as part of the consideration for the trust company's agreement to assume the deposit liabilities of the bank, and the bank delivered to the corporation as security for the loan assets of a book value substantially in excess of the amount thereof, a judgment creditor of the bank had no right expressly or by implication to require the corporation to satisfy his claim where it appeared that the contract contained no provision for payment by the corporation of such claim or for subordination of its rights thereto, although it also appeared that the bank had intended to satisfy all its obligations to its general creditors as well as to its depositors, that, due to a misinterpretation of advice of counsel, the bank's officers had understood that the creditor's claim "was dead", and that the corporation knew of the existence of the claim and by the exercise of reasonable care and diligence should have known of its status a reasonable time before the making of the contract.

Conduct of the Federal Deposit Insurance Corporation in defending an insured bank in an action brought against it by a general creditor of the bank could not be resorted to for an interpretation, fixing liability on the corporation to such creditor, of an unambiguous contract which the corporation had made with the bank and which contained no provision to that effect.

The Federal Deposit Insurance Corporation in making a loan to an insured bank under § 12B (n) (4) of the Federal reserve act as amended is not required to subordinate its rights to the bank's creditors, although it may do so.

An arrangement made in good faith in the course of a voluntary liquida-

tion of a solvent bank, which included a loan to the bank by the Federal Deposit Insurance Corporation secured by a pledge of certain assets by the bank, a payment by the bank of the amount of the loan and all its other assets to a trust company and an agreement by the trust company to pay claims of depositors of the bank, was not fraudulent as to a general creditor of the bank on the ground that his name was omitted by the bank from a list of its creditors where there was no intention on the part of the bank to hinder, delay or defraud such creditor.

BILL IN EQUITY, filed in the Superior Court on March 6, 1940, and afterwards amended.

The plaintiff appealed from a final decree, entered after a hearing by *Hurley*, J.

*W. G. Todd*, (*W. Herbits* with him,) for the plaintiff.

*P. H. Ready*, for the defendant Federal Deposit Insurance Corporation.

Cox, J. The plaintiff, on November 2, 1936, brought an action of contract or tort against the defendant, The National City Bank of Lynn, hereinafter referred to as the bank, and on January 8, 1940, recovered judgment upon which execution was issued and has been returned wholly unsatisfied. Before that action came to trial, the bank entered into a voluntary liquidation on December 3, 1938, when it was not insolvent. On that date, the bank entered into an agreement with the Essex Trust Company, originally a party defendant to this suit, by the terms of which it sold and transferred to that company certain liquid assets in consideration of the trust company's agreement to assume "deposit liabilities," as distinguished from those that might be described as liabilities to general creditors. At the same time, the bank pledged all its other assets to the defendant Federal Deposit Insurance Corporation, hereinafter referred to as the corporation, as collateral security for a loan by the corporation to the bank. Pursuant to the loan agreement, the sum loaned was immediately transferred to the trust company as part of the assets of the bank. The agreement between the bank and the corporation is "incorporated within the terms of a document entitled 'Loan Application, The National City Bank of Lynn, Lynn, Mass., and Schedule of Collateral Pledged.'"

The plaintiff brought this bill on April 24, 1940, after its execution against the bank had been returned unsatisfied. The allegations in brief were that the bank had sold or pledged its assets when it was insolvent; that the "conveyances" to the trust company and the corporation were made for the benefit of depositors and creditors alike, all of whom the "buyers" undertook to pay in full, but that by error, mistake or otherwise, the plaintiff's name as a creditor of the bank was omitted; that the bank undertook to inform the trust company and the corporation of the names of all its creditors, but that it intentionally, wilfully, negligently or fraudulently "omitted to include" the plaintiff's name as a creditor in the certified list that was furnished; that the trust company and corporation knew, or should have known, of the bank's insolvency and of the omission of the plaintiff's name as a creditor; that the corporation undertook to and did insure the bank against claims of all depositors and creditors, or insured all depositors "and/or" creditors against loss under the provisions of the "Federal Deposit Insurance Law"; that the "conveyances" to the trust company and corporation were in fraud of creditors, and that it holds an unsatisfied judgment against the bank. The plaintiff prayed that its claim be established and that the defendants, or some of them, be ordered to pay it; that the conveyance to the corporation be set aside; and for other relief. Officers and directors of the bank were joined as defendants, as to whom the bill appears to have been dismissed. The plaintiff states in its brief that, at the hearing on the merits, it filed a discontinuance against the Essex Trust Company and that the hearing proceeded against the other two defendants. After the judge of the Superior Court who heard the suit had filed his findings, rulings and order for decree, the plaintiff was allowed to amend its bill by reciting, among other things, that the bank was solvent when its assets were sold and pledged to the trust company and the corporation, and that the assets were pledged, assigned, sold and conveyed to the corporation for the purpose first of paying all of the depositors and creditors of the bank in full and thereafter as security for a loan or

loans made by the corporation to the bank in connection with its liquidation.

The agreement between the bank and the corporation, which, as the trial judge found, is incorporated within the terms of the loan application, provides for the loan that was made and recites that its proceeds will be paid over to the trust company "as part of the consideration for the agreement of . . . [the trust company] to assume the deposit liabilities of" the bank. Although the nature and extent of the liquidating operations do not appear, there is a finding that the bank still holds an equity of redemption in the assets pledged to the corporation, the book value of which exceeds the amount of the loan by more than $500,000.

The findings of the trial judge, which were voluntary, recite that the negotiations between the bank and corporation began in the spring of 1938 for the purpose of arranging satisfactory terms upon which the voluntary liquidation of the bank could be brought about; that when the transactions were accomplished, and at all times prior thereto, it was the intention of the bank to satisfy all outstanding obligations to general creditors and depositors alike; and that on December 3, 1938, when the agreements were executed, the officials of the bank, because of information they had received from counsel, "would have been justified in being under the impression that the plaintiff's case had no merit and that ultimately it would result in judgment for the Bank. The advice which they received from their counsel, however, was misinterpreted, so that actually they believed that the plaintiff's case had been concluded, that 'it was dead' and was no longer before the court." Further findings are that the corporation was informed of the plaintiff's action against the bank prior to December 3, 1938, and that, by the exercise of reasonable care and diligence, the corporation should have known of the status of the plaintiff's claim for a reasonable period of time prior to that date.

It was specifically found that there was no fraud in the transactions of December 3, 1938, that the transfers and conveyances were made upon a fair consideration, and that

none of the parties was actuated by bad faith.   The ultimate conclusion of the trial judge was that the plaintiff had acquired no rights under the agreement between the bank and the corporation, and could not reach any assets in the corporation's hands.   The final decree dismissed the bill as to the corporation, adjudged the amount due the plaintiff from the bank, and ordered the bank to pay the plaintiff the sum due from any assets in its possession or which might thereafter be received by it, subject only to such right, title and interest as the corporation might have in and to them under the terms of its agreement, and the bank and its liquidating agent or agents were appropriately enjoined in order to safeguard the plaintiff's claim against the bank, subject to the rights of the corporation under its agreement.   The plaintiff appealed.

The plaintiff contends that the findings of the trial judge do not support his ultimate conclusion, but that, on the contrary, an agreement or understanding is disclosed between the bank and the corporation to pay the plaintiff's claim, or that the corporation subordinated its rights under the loan agreement to the claims of depositors and creditors.

The evidence is not reported, and it does not appear that a report of material facts was made under G. L. (Ter. Ed.) c. 214, § 23.   We are of opinion, however, that the plaintiff's contentions cannot be sustained whether we deal with the findings of the judge as containing all the material facts or not.   See *Birnbaum* v. *Pamoukis*, 301 Mass. 559, 561–562, and cases cited.

The corporation derives its power to make the agreement in question under § 12B (n) (4) of the Federal reserve act, as amended (see c. 614, 49 U. S. Sts. at Large, 699; c. 489, 52 U. S. Sts. at Large, 767; U. S. C. [1940 ed.] Title 12, § 264 [n] [4]), which provides, as far as material, as follows: "Whenever in the judgment of the board of directors such action will reduce the risk or avert a threatened loss to the Corporation and will facilitate a merger or consolidation of an insured bank with another insured bank, or will facilitate the sale of the assets of an open or closed insured bank to and assumption of its liabilities by another

insured bank, the Corporation may, upon such terms and conditions as it may determine, make loans secured in whole or in part by assets of an open or closed insured bank, which loans may be in subordination to the rights of depositors and other creditors . . . ." The bank and trust company were "insured" banks within the meaning of the act. The provision that loans may be in subordination to the rights of depositors and other creditors is not mandatory. The corporation was created by clause (a) of said § 12B which provides that it shall "insure" the deposits of all banks that are entitled to the benefits of insurance under the section, and that it shall have the powers granted therein. See *Weir* v. *United States*, 92 Fed. (2d) 634, 636. It is true that the corporation, in making loans, may do so "upon such terms and conditions as it may determine."

The judge found that the agreement between the bank and the corporation was incorporated within the terms of the loan application, which provides, among other things, that "This application as hereafter amended or supplemented, together with all conditions imposed by or all agreements entered into or for the benefit of the Corporation in connection with the making of the loan hereby applied for and the note or notes of the Bank evidencing such loan shall constitute a contract between Bank and the Corporation." As there is no finding that there were any conditions imposed or any oral agreements entered into, we must look to the loan application to find what the contract was. It contains no provision for the payment of the plaintiff's claim or for the subordination of the corporation's rights to the plaintiff. It is true that, in the schedules attached to the loan application, statements appear of the assets and liabilities of the bank and of all its liabilities not shown in its balance sheet. But there is nothing in the entire document that contains any promise on the part of the corporation to pay all creditors of the bank, including the plaintiff, or any undertaking by the corporation to subordinate its rights to the rights of depositors or any creditors. The mere submission of statements by the bank of

its assets and liabilities, its list of depositors, and the copy of the proposed contract of sale between the bank and the trust company, cannot be construed as an admission of liability on the part of the corporation to assume any of the bank's liabilities. It is reasonable to assume that one who is asked to loan, as in the case at bar, over $1,000,000, would require a statement of the assets and liabilities of the person to whom the loan is to be made. The loan agreement expressly provides that the proceeds of the loan are to be paid over to the trust company as part of the consideration for its agreement to assume the deposit liabilities of the bank. The trust company was agreeing with the bank to pay the depositors, and that was the extent of its agreement. The corporation was to supply a substantial part of the consideration required for this purpose, and the parties must be held to have expressed their intentions in their written instruments. There is nothing ambiguous about the terms of either contract. A court cannot read into a contract an obligation that was not assumed. *White* v. *Solomon,* 164 Mass. 516, 518. *Cobb* v. *Library Bureau,* 268 Mass. 311, 316. *Lovell* v. *Commonwealth Thread Co. Inc.* 272 Mass. 138, 140–141. *Marcelle, Inc.* v. *Sol. & S. Marcus Co.* 274 Mass. 469, 474, 475. *A & H Finance Corp.* v. *Goldman,* 293 Mass. 113, 116.

We are of opinion that the plaintiff cannot recover upon the theory of any implied contract. *Kennedy* v. *B. A. Gardetto, Inc.* 306 Mass. 212, 216, 217, and cases cited. The written agreement contains no obligation on the part of the corporation to pay creditors of the bank, and we think the conclusion is warranted that it is intentionally silent on that point. Such an obligation was not indispensable to effectuate the intention of the parties to the loan agreement.

The findings of the trial judge that it was the intention of the bank to satisfy all outstanding obligations to general creditors and depositors alike, and that the resolutions of the bank's directors, which were dictated by the corporation and authorized the voluntary liquidation, had provided that it was desired to protect its depositors and creditors against additional losses which would be sustained in the

event of "forced liquidation," and to provide for the full payment of its obligations to depositors and creditors, require no different conclusion. These findings are not inconsistent with the ultimate conclusion that the plaintiff acquired no rights under the agreement between the bank and the corporation. The fact remains that when the contract was entered into it contained no provision for the payment of creditors, and, in the circumstances disclosed, certainly no provision for payment to the plaintiff. The agreement must be taken as the parties made it. *Coram* v. *Davis*, 209 Mass. 229, 247. *Brighton Packing Co.* v. *Butchers' Slaughtering & Melting Association*, 211 Mass. 398, 405. *Raynes* v. *Stevens*, 219 Mass. 556, 558. *Joseph Martin, Inc.* v. *McNulty*, 300 Mass. 573, 577. See *Cronin* v. *National Shawmut Bank*, 306 Mass. 202, 210.

The plaintiff was not listed as a creditor of the bank in the agreement with the trust company for an obvious reason. It was not a depositor. Neither was it listed as a creditor in the loan application. The bank "actually . . . believed that the plaintiff's case had been concluded, that 'it was dead' and was no longer before the court." We think it follows from this that all reference to the plaintiff's claim in the agreement was intentionally omitted, at least as far as the bank is concerned, and, from what has been said already, it follows that the corporation assumed no obligation to pay it. The assumption of the trial judge, that, if it had been appreciated by any of the parties to the agreement that the plaintiff's claim was outstanding and as meritorious as it was later determined to be, provision would have been made to take care of it, does not help the plaintiff. The fact remains that the agreement, as actually made, gave the plaintiff no rights.

One of the schedules attached to the loan application, entitled "Other Assets," describes a fund of $10,000 as due from the trust company as a demand deposit special account of the corporation "for adjustment Re-Loan" to the bank. The judge found that this fund was not provided to take care of the plaintiff's claim, but, on the contrary, was for the purpose of providing for claims for counsel fees, utility

bills and secretarial services, and, in general, claims that were anticipated, but the amounts of which were uncertain. This finding binds the plaintiff. *Wyness* v. *Crowley,* 292 Mass. 459.

The plaintiff contends that the finding, that, when its case against the bank was reached for trial in March of 1939, the bank's defence was voluntarily assumed by the corporation, discloses that the corporation had undertaken, in its contract with the bank, to pay the plaintiff's claim if it prevailed in its action. The contract, however, was not ambiguous. By its terms the corporation had assumed no obligation to pay the plaintiff's claim, and there is no occasion to resort to the subsequent conduct of the parties for the purpose of interpretation. *Marcelle, Inc.* v. *Sol. & S. Marcus Co.* 274 Mass. 469, 474, 475. *Atwood* v. *Boston,* 310 Mass. 70, 74–75. *Central Trust Co.* v. *Rudnick,* 310 Mass. 239, 246. See *Rizzo* v. *Cunningham,* 303 Mass. 16, 20–21.

The trial judge stated that there was no evidence before him that the claim of any creditor other than the plaintiff was not provided for in the "plan for the liquidation of the Bank," and that if it was proper, he drew the inference that the plaintiff's claim was the only one for which provision was not made. It is unnecessary to determine whether this was a proper inference to draw. The judge found, as already indicated, that the agreement between the bank and the corporation was included in the loan application. If we assume, without deciding, that the inference was properly drawn, the conclusion here reached that the loan agreement expresses the contract remains. The facts, as found, that, by the exercise of reasonable care and diligence, the corporation should have known the status of the plaintiff's claim for a reasonable period of time prior to December 3, 1938, and that if inquiry had been made of counsel for the bank, a "clearer" explanation would have been secured than was received from the officers of the bank, do not change the situation. The corporation had no contractual relations with the plaintiff, and, having in mind the provisions of the Federal statute, we see no duty that it owed

to the plaintiff. The case at bar is distinguishable from *Forbes* v. *Thorpe*, 209 Mass. 570, 581, 582.

The plaintiff's final contention is that a voluntary liquidation of a national bank contemplates a payment in full of all depositors and other creditors, and that such liquidation to the exclusion of any creditor works a fraud upon the latter and is ineffectual to divest him of his right to a ratable distribution of the assets. We find nothing to warrant this contention. The provisions of the Federal statute have already been referred to, as well as the purpose of the act establishing the corporation and granting its powers. See *Weir* v. *United States*, 92 Fed. (2d) 634, 636; *Doherty* v. *United States*, 94 Fed. (2d) 495, 497. Although the corporation may subordinate its rights to claims of creditors, it is not required to do so. The banking act of 1935, c. 614, 49 U. S. Sts. at Large, 692; U. S. C. (1940 ed.) Title 12, § 264 (j), provides, in part, that all suits of a civil nature at common law or in equity, to which the corporation shall be a party, shall be deemed to arise under the laws of the United States, with an exception not here material. The judge found that there was no fraud in the "transactions of December 3, 1938," that the transfers and conveyances made on that date were upon a fair consideration, that none of the parties was actuated by bad faith, and that there was no intention on the part of the bank, in omitting the plaintiff's name as a creditor, to hinder, delay or defraud it or any other creditor or depositor of the bank. Moreover, as already appears, the original contention of the plaintiff that the bank was insolvent at the time the agreements were made was not only abandoned at the trial, but the plaintiff was allowed to amend its bill by setting out that the bank was, in fact, solvent. The findings establish that there was no fraud in fact in pledging the collateral to the corporation, and inasmuch as the pledge was to secure a present loan upon a fair consideration at a time when the bank was not insolvent, the plaintiff's contention that the transaction amounted to a fraud cannot be sustained. *Kaufman* v. *Tredway*, 195 U. S. 271. *Lucas* v. *Federal Reserve Bank*, 59 Fed. (2d) 617, 621, and cases

cited. *Cosmopolitan Trust Co.* v. *S. L. Agoos Tanning Co.*
245 Mass. 69, 73, and cases cited. *Banca Italiana Di Sconto*
v. *Bailey,* 260 Mass. 151, 159, 160. *Mason* v. *Wylde,* 308
Mass. 268, 283, 284. G. L. (Ter. Ed.) c. 109A, §§ 3, 4 and 7.

*Decree affirmed.*