**BROWN v. NEW YORK LIFE INS. CO. et al.**

**No. 11000.**

Circuit Court of Appeals, Ninth Circuit.

Nov. 24, 1945.

248

Hampson, Koerner, Young & Swett and James C. Dezendorf, all of Portland, Or., for appellant.

Maguire, Shields & Morrison and Robert H. Agnew, all of Portland, Or., and James M. Kane, of Chicago, Ill. (Edward C. Klein, of Chicago, Ill., of counsel), for appellee Federal Deposit Ins. Corporation.

Before DENMAN, BONE, and ORR, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a judgment of the district court awarding to appellee the major portion of the proceeds of two certain policies of insurance on the life of Edward N. Brown. For a more complete statement of the facts in this case, see the opinion of the lower court. Brown v. New York Life Ins. Co., D. C., 58 F.Supp. 252.

Counsel for appellant states that "the sole question" for (our) determination "is whether the premiums were paid with funds wrongfully embezzled or misappropriated from the Bank." Appellee states that "the basic question in this case is whether the various premium payments were paid with funds belonging to the defaulter or with funds wrongfully embezzled * * * from the Bank." The parties are in practical agreement on the fundamental issue involved.

At the outset we confront the statutory and fiduciary relationship of Brown to the defrauded bank (referred to hereafter as the "Bank"). He was a trusted employee and official of the bank (Harney County National Bank). As such, his duties and obligations were, in vital measure, affected by laws governing the operation of such banks, and their officers and employees. From the record it is clear that he violated the obligations of a trusted officer since the court found that his peculations exceeded four hundred thousand dollars, during his years of connection with the Bank. The directors of the Bank were entirely ignorant of this state of affairs and the truth did not appear until after he committed suicide on August 6, 1942.

The relationship of the Federal Deposit Insurance Corporation to the Bank made this federal corporation an insurer of the deposits of the Bank. When its capital became impaired through Brown's peculations it was unable to meet its deposit liabilities. Two methods were available to the parties by which the Federal Deposit Insurance Corporation might protect the depositors. (1) By paying the claims of depositors if the Bank was placed in receivership. (2) By advancing cash to the insured bank, through the medium of a loan, or by a purchase of the assets to replace substandard assets. In this case, the Federal Deposit Insurance Corporation met the contingency by pursuing the purchase method. Under 12 U.S.C.A. § 264 (n) (4). See discussion in Thomas P. Nichols & Son Co. v. National City Bank, 313 Mass. 421, 48 N.E.2d 49, certiorari denied 320 U.S. 742, 64 S.Ct. 42, 88 L.Ed. 440; Lamberton v. FDIC, 3 Cir., 141 F. 2d 95, dealing with power of FDIC to make such a contract and its rights thereunder.

By so purchasing the assets, the FDIC did not discharge a debt. The depositors assigned nothing to the Bank or to the FDIC and the latter was not a subrogee of the depositors nor did it take, or attempt to take, an assignment of the depositors' claims against the Bank. Nor did FDIC insure the Bank or depositors against Brown's dishonesty. It insured each depositor to the extent of $5,000. Had the Bank closed and FDIC paid the deposit insurance liability to depositors, as required by statute in such cases, it would have been subrogated to *their rights* against the Bank to the extent of the payments made. 12 U.S.C.A. § 264 (*l*) (7). FDIC did not do this. Instead, it purchased certain assets rather than permit the Bank to close, and it paid cash therefor.

Among the assets so purchased by and assigned to FDIC was the Bank's claim against Brown which was founded on the loss sustained by the Bank by reason of Brown's peculations while an employee, officer and director of the Bank. FDIC acquired its cause of action herein as a purchaser for value, by express contract with

the Bank. The depositors were strangers to this purchase transaction and whatever right of action the FDIC acquired, it acquired through this purchase and assignment. We view this as a transaction for value, and so hold.

■ When Brown embezzled funds from the Bank, the Bank suffered a loss of its assets, but continued to be *indebted* to its depositors. Under the state of facts here revealed, the Bank alone acquired a right of action against Brown. The funds of depositors were protected by the transactior carried out in this case [1] and it is plain that FDIC is claiming only through the Bank, not through the depositors.

■ The relationship between a bank and a depositor is that of debtor and creditor. Dahl & Penne v. State Bank of Portland, 110 Or. 68, 222 P. 1090; Mahon v. Harney County Nat. Bank, 104 Or. 323, 206 P. 224; Steele v. Bank of California, 140 Or. 107, 9 P.2d 1053; In re Edwards' Estate, 140 Or. 431, 14 P.2d 274. The ban' acquires ownership of the deposited money and becomes obligated to account to the depositor. A credit entry is made on its books against which it will honor drafts and checks. The bank pays out its own money on these checks and drafts but is entitled by the implied contract of deposit to charge to the account of the customer the amount thereof.

In the case at bar all of the checks except one, which were forwarded by Brown in payment of the premiums on the policies of life insurance, were drawn upon two general accounts he had in the Bank. The funds paid to the insurance company on these checks were part of the funds of the Bank. We find nothing in the record to indicate a contract between Brown and the Bank making any of his accounts anything other than general accounts. See Dahl & Penne, Inc. v. State Bank of Portland, supra; Keyes v. Paducah & I. R. Co., 6 Cir., 61 F.2d 611, 86 A.L.R. 203; Titlow v. Sundquist, 9 Cir., 234 F. 613. Upon the evidence before us it is plain that at all times when Brown paid his premiums, any credit balance in his accounts was a fictitious one because he had deliberately failed to charge his withdrawals and indebtedness to the Bank. Therefore, despite the apparent credit balance in his account, any time the Bank honored his checks it was unknowingly paying out its own funds.

Appellant (mother of Brown) insists that before FDIC (under its purchase and assignment) may share in the proceeds of the policies of life insurance payable to her it would have to be proven that the stolen funds entered Brown's various accounts carried in the Bank, and since these stolen funds were not clearly traced into the accounts out of which premiums were paid, all of the proceeds of the policies must be awarded to her, as beneficiary named in the policies.

■ In a lengthy opinion (supra) the trial court disagreed with this view of the law, as applied to the facts in this case. It concluded (and we think correctly) that embezzled funds were either indirectly or constructively traced into the premium payments. The court decided that by reason of the wrongful and unlawful use by Brown (see 12 U.S.C.A. § 375a and 12 U.S.C.A. § 592) of the assets and property of the Bank a constructive trust arose in favor of the Bank, and in favor of FDIC, as assignee of the Bank, for the proportion of the proceeds of the two insurance policies

---

[1] "This sale was part of a transaction, whereby a second bank, The United States National Bank of Portland, Oregon (hereinafter referred to as the Purchasing Bank), was to take over the deposit liabilities and acceptable assets of the Bank. In further consideration of assuming the Bank's deposit liabilities the Purchasing Bank was to receive the consideration paid by the FDIC to the Bank for the unacceptable assets. The depositors of the Bank were then to become depositors of the Purchasing Bank.

"The purchase price paid by the FDIC to the Bank was equal to the difference between the agreed value of the assets classified as acceptable by the Purchasing Bank and the amount of the deposit liabilities assumed by the Purchasing Bank. The initial cash price paid by FDIC was $906,856.47 (which was far in excess of even the $598,646.34 book value of the assets purchased), and FDIC agreed to pay such additional sums as might be necessary to meet the Bank's liability to any depositor or depositors not included in the list of deposit liabilities attached to the contract. The Bank, pursuant to the contract, delivered the acceptable or bankable assets including the amount of the initial purchase price, to the Purchasing Bank, thereby enabling the latter to assume and pay the entire deposit liabilities."

as the amount of the premiums paid from the Bank funds bears to the total amount of the premiums paid on said policies.

■ Appellant paid nothing for the insurance policies and as to her they were a gratuity. She is innocent of fraud perpetrated by herself, but as the lower court pointed out, even the widow of a trustee ex maleficio who has paid no consideration for the property purchased with misappropriated funds, or for their fruits, may not hold such property, or the fruits thereof, against the cestui que trust, who is the real owner. A third person, unless he or she has in good faith acquired for value without notice a subsequent interest, seeking any benefit resulting from the misappropriation, becomes a particeps criminis however innocent of the fraud in the beginning.[2]

■ Assuming arguendo that some of the credits appearing in Brown's deposit account or accounts in the Bank represented funds derived by him from legitimate sources, it would still follow that title to such funds passed to the Bank upon their deposit. Having previously violated the trust and confidence reposed in him by the Bank and imposed upon him by law, neither equity nor the law will then permit him to secretly and surreptitiously juggle or apply those credits to the payment of insurance premiums rather than to the reduction of his prior defalcations, thereby serving his interests at the expense and to the prejudice of an employer who was wholly ignorant of such unlawful operations. The facts in this case show that it was impossible for the Bank to exercise any right of set-off which it might have had. To assume that the funds deposited by Brown in his accounts remained his until the Bank claimed and exercised a right of set-off, would, in this instance, as the lower court points out, mean that where a thief is successful in concealing his abstractions, the ill-gotten gains will be protected, whereas, if the abstractions have been timely discovered, the losses could have been recouped. Such is not and should not be the law. This is all the more apparent by reason of the fact that the failure of Brown to notify the Bank or make the set-off was itself a fraud.

Appellant claims that the deposits of the embezzler from which the premiums on the insurance policies were paid were in large part made up of the monthly salaries paid by the banking corporation for services rendered while Edward N. Brown was engaged in his embezzlement activities. But at the very moment any month's salary was about to be paid, he, as an officer or trust employee of the Bank, should have advised the Bank of his embezzlements. Failing in such duty, the salary moneys paid him were infected by a trust of the whole thereof to the paying bank. The transaction might otherwise be described as the receipt by Edward N. Brown of moneys not due him, obtained under false pretenses of his performance of his trust obligations to his employer.

The parties hereto have conceded that the rule announced in Jansen v. Tyler, 151 Or. 268, 47 P.2d 969, 49 P.2d 372, if applicable to the facts of this case, would award to appellee that proportion of the proceeds of the policies which the premiums paid from embezzled funds or property bear to the total premiums paid. The trial court considered itself bound by this rule and applied the doctrine of that case to the facts in the case at bar. We believe that the facts of this case clearly support the views of the trial court in this respect, and that the rule in the Jansen case was correctly applied. The trial court also regarded American Surety Co. v. Bank of California, 9 Cir., 133 F.2d 160, as clearly distinguishable on the law and the facts. The lower court did not err in so deciding.

Appellant contends that the trial court abused its discretion in denying a new trial. The motion was based on the contention (supported by affidavit of counsel for appellant) that an auditor had made an audit of the records of the Bank for FDIC and that after the court's decision was announced this auditor had advised counsel for appellant that from the audit it appeared probable that Brown was not indebted to the Bank as a result of embezzlements and misappropriations during the years 1935, 1936, 1937, 1938 and perhaps subsequent years except 1942. Counsel for appellant also claimed in his affidavit, that the auditor for the (Brown) Estate had reported that his examination disclosed that the Bank's records reflect many deposits and withdrawals in depositors' accounts which FDIC claimed were withheld, so

---

[2] The status of a wife or mother who is innocent of fraud and who is beneficiary of a contract of insurance, is well stated in Vorlander v. Keyes, 8 Cir., 1 F.2d 67, citing Story's Equity Jurisprudence (14th Ed.) and Perry on Trusts.

that the funds represented by the so-called withheld items were actually received by and went through the records of the Bank. But in any event, the affidavit of appellant's counsel did not explain away the harsh fact that over the years of his peculations, Brown had managed to steal $416,777.73 of the Bank's funds.

At pre-trial it was stipulated that FDIC could produce evidence to support the facts (extensive embezzlements from 1935 to 1941). Appellant waived its production and contended that this evidence was incompetent, irrelevant and immaterial.

In view of the disposition of the issues of law by the trial court, we conclude that, under the circumstances, it was not error to refuse a new trial. The granting of a new trial rests in the sound discretion of the trial court. Manifest error and abuse of discretion is not shown.

The facts in this case were carefully and painstakingly marshaled by an able and experienced trial judge and an examination of the record and a consideration of the authorities cited by counsel convinces us that there is no basis in law or equity for disturbing his judgment in disposing of the issues. For these reasons, and those set forth in the opinion of the lower court (supra) the judgment is

Affirmed.